**Ruth M. DESCH, Plaintiff,**

v.

**Elmer REEVES, Defendant.**

**Ruth M. DESCH, Plaintiff,**

v.

**NATIONAL AUTOMOBILE TRANS-PORTERS ASSOCIATION, Defendant.**

**Civ. A. Nos. C-20-WS-57, C-83-WS-57.**

United States District Court M. D. North Carolina, Winston-Salem Division. June 25, 1958.

ger in ٦ 1951 Model Nash sedan automobile owned by the defendant, National Automobile Transporters Association, and being driven and operated by the defendant, Elmer Reeves, on Routes 62 and 3 near the northern boundary of the city limits of Jeffersonville, Indiana. The plaintiff, a citizen and resident of the State of Pennsylvania, thereafter instituted suit against the defendant, National Automobile Transporters Association, a Michigan corporation, in the Eastern District of Michigan, and an action against the defendant, Elmer Reeves, a citizen and resident of the State of North Carolina, in the Middle District of North Carolina. In both actions the plaintiff seeks the recovery of $25,000 for the injuries sustained in said accident, and the complaints in each action are couched in almost identical language. Upon motion of the parties, the suit against National Automobile Transporters Association was later transferred from the Eastern District of Michigan to the Middle District of North Carolina for the convenience of parties and witnesses and in the interest of justice.

On May 7, 1958, the actions, consolidated for trial by consent, came on for trial before the court without a jury. At the conclusion of the trial, the Court took the cases under advisement pending receipt of briefs from the parties in support of their contentions. The briefs of the parties having been received, the Court, after considering the pleadings, evidence, and briefs of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

Schoch & Schoch, High Point, N. C., and Tom P. Monteverde, Philadelphia, Pa., for plaintiff.

Ratcliff, Vaughn, Hudson, Ferrell & Carter, Winston-Salem, N. C., for defendants.

STANLEY, District Judge.

On January 28, 1955, the plaintiff was injured while riding as a guest passen-

### Findings of Fact

1. The plaintiff, Ruth M. Desch, is a citizen and resident of the State of Pennsylvania. The defendant, Elmer Reeves, was a citizen and resident of the State of North Carolina at the time the action against him was instituted, and the defendant, National Automobile Transporters Association, was and is a corporation organized and existing under the laws of the State of Michigan. The amount in controversy in each of the actions, exclu-

sive of interest and costs, exceeds the sum of $3,000.

2. On January 28, 1955, the plaintiff was a guest passenger, being transported without payment therefor, in a 1951 Model Nash sedan automobile owned by the defendant, National Automobile Transporters Association, and being driven and operated by the defendant, Elmer Reeves.

3. At the time of the accident referred to, the defendant, Elmer Reeves, was an agent and employee of the defendant, National Automobile Transporters Association, and at all times was acting within the scope of his agency and employment.

4. The accident happened on Routes 62 and 3 near the northern boundary of the City of Jeffersonville, in the State of Indiana, in a sparsely developed area. At the time of the accident the automobile driven by Elmer Reeves had completely passed through the business district of Jeffersonville, Indiana. The accident happened in a zone marked as a 35-mile per hour speed zone.

5. The defendant, Elmer Reeves, was Director of the Accident Prevention Division of the defendant, National Automobile Transporters Association. The defendant Reeves, with the plaintiff as his passenger, left the plaintiff's home in Columbia, Pennsylvania, on January 23, 1955, enroute to Tuscaloosa, Alabama, where the defendant Reeves was to participate in a fleet supervisors' training court. The plaintiff was a friend of the defendant Reeves and was not an employee of the defendant, National Automobile Transporters Association, and had nothing to do with the business of said defendant.

6. The defendant Reeves left Tuscaloosa, Alabama, driving the Nash automobile, with the plaintiff as his nonpaying guest passenger, on the morning of January 27, 1955, with his destination as Detroit, Michigan. The plaintiff and the defendant Reeves arrived in Bowling Green, Kentucky, on the evening of January 27, 1955, and left Bowling Green, Kentucky, on the morning of January 28, 1955. The plaintiff was to board a train at Fort Wayne, Indiana, and the defendant was to proceed to his home at Detroit, Michigan. The accident occurred prior to their reaching Fort Wayne, Indiana.

7. Highways 62 and 3 run in a general north-south direction at the point of the accident. The accident occurred on a straight stretch of road. The highway was a four-lane highway with two lanes for traffic proceeding in each direction and a median strip separating the two northbound lanes from the two southbound lanes.

8. The accident happened at about 12:15 o'clock P.M. The weather was clear and the surface of the road was dry.

9. As the defendant Reeves was proceeding northwardly along the highway at a speed of from 30 to 35 miles per hour he approached other northbound traffic ahead of him in the right-hand lane where he was traveling. Thereupon, said defendant drove into the passing lane, or left-hand lane for northbound traffic, preparatory to passing the slower moving traffic.

10. Shortly after turning into the passing lane, or left-hand lane for northbound traffic, the defendant Reeves observed a truck loaded with automobiles coming from the opposite direction and proceeding southwardly in the passing lane for southbound traffic, approximately 200 to 300 feet ahead of him.

11. As a part of his official duties, the defendant Reeves was required to check certain transportation equipment on the highway for speed and safety and determine whether or not loads were properly chained. In the execution of this work, it was necessary for said defendant to take his eyes off the highway upon which he was traveling in order to observe other vehicles.

12. After first seeing said car-carrying unit or truck proceeding southwardly, the defendant Reeves observed the same continuously until it was parallel with his own vehicle. The purpose of this observation was to ascertain the

name on the side of the equipment so as to identify it, and to determine whether or not the automobiles it was carrying were properly chained. At the time the defendant Reeves looked to his left and observed the car-carrying unit or truck he was meeting, he saw nothing ahead of him in the lane of travel in which he was proceeding.

13. Some two or three seconds after Reeves looked to his left, his automobile collided with the rear of a panel truck. Reeves did not see the panel truck prior to the accident and did not know where it came from or how it got into his lane of traffic.

14. Prior to the collision, the panel truck had stopped in the passing lane for northbound traffic for a short period of time. The driver was waiting for southbound traffic to clear so that he could cross the southbound lanes of travel. The operator of the panel truck stated that he had traveled northwardly on Highways 62 and 3 in the left lane for northbound traffic for approximately three-fourths of a mile prior to reaching the intersection where the accident occurred. He estimated that he had been in a stopped position some 15 seconds to a minute at the time the accident occurred.

15. At the time of the collision, the panel truck was sitting at a slight angle with a part of the truck in the island or median strip between the northbound and southbound lanes of travel and a part of the truck in the northbound passing lane.

16. At the time of and immediately prior to the accident, the plaintiff was reading a newspaper and by reason of this testified at the time of the trial that she had no knowledge as to how the accident occurred. She had been on a long trip with the defendant Reeves and was thoroughly familiar with the nature of his work and the fact that a part of his routine duties was to check, while his own vehicle was in motion, other vehicles on the highway.

17. As a result of the collision, the plaintiff sustained certain personal injuries, medical expenses, and other damages.

## Discussion

■ Since this is a diversity suit and the accident happened in the State of Indiana, the substantive law of that state governs the rights and liabilities of the parties to these actions. Rayfield v. Lawrence, 4 Cir., 1958, 253 F.2d 209.

At the time of the accident there was in force in the State of Indiana a so-called "guest" statute,[1] and the conduct of the defendants must be measured by the construction placed upon this statute by the courts of the State of Indiana. There can be no doubt but that the defendants were guilty of negligence upon the occasion complained of, but whether they were guilty of "wanton or wilful" misconduct, as referred to in the Indiana guest statute, is another question. This statute not only places upon the plaintiff the burden of proving negligence, but the additional burden of proving wanton or wilful misconduct in the operation of defendants' motor vehicle.

At the outset, it should be borne in mind that neither the plaintiff nor the defendant Reeves saw the panel truck prior to striking it, and neither was mindful of any obstruction in Reeves' lane of traffic prior to the accident. Reeves stated that he did not see the panel truck prior to the accident and that he did not know where it came from or how it got into his lane of traffic. The plaintiff was reading a newspaper and has no recollection as to how the accident oc-

---

1. Burns' Annotated Indiana Statutes, Section 47–1021, "Guest of owner or operator—Right to damages.—The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

curred and gave Reeves no warning whatever of impending danger.

Generally speaking, in order to constitute wanton or wilful misconduct, within the meaning of a guest statute, such as the one in force in the State of Indiana, there must be actual knowledge, or the legal equivalent of actual knowledge, of the danger present from the performance or nonperformance of a particular act, plus a conscious failure to act to avert the injury or a reckless disregard to the danger and its possible consequences. 60 C.J.S. Motor Vehicles § 399 (4) c, page 1001.

The following definition of the term "wanton or wilful" appears in Kirsch v. Harker, 1950, 120 Ind.App. 66, 89 N.E.2d 924, 926:

"Our courts have laid down the rule that wilful or wanton misconduct consists of conscious and intentional doing of a wrongful act or omission of a duty with reckless indifference to the consequences under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result. Knowledge of such existing conditions may be obtained through the senses of the doer or from warning of others. Bedwell v. DeBolt, 1943, 221 Ind. 600, 50 N.E.2d 875; Swinney v. Roler, 1943, 113 Ind.App. 367, 47 N.E.2d 846; Baines v. Collins, 1942, 310 Mass. 523, 38 N.E.2d 626, 138 A.L.R. 1123; Vol. 4, Blashfield Cyc. of Automobile Law and Practice, Perm.Ed., § 2322, pp. 370–388."

The rule laid down in Kirsch v. Harker, supra, has been repeatedly stated and restated in the Indiana decisions dealing with their guest statute. Simply and briefly stated, it would seem that for one to be guilty of "wanton or wilful" misconduct he must consciously and intentionally do a wrongful act under circumstances which show that he had knowledge of existing conditions and that injury would probably result.

Factually, the case most closely resembling the case at hand is that of Becker v. Strater, 1947, 117 Ind.App. 504, 72 N.E. 2d 580, 581. In that case, the defendant was driving an automobile on a highway approaching an intersection with a stop sign clearly visible to oncoming traffic. He directed his attention to some cattle in a field to his left and failed to stop as he entered the intersection and failed to look to his right where another automobile, with which he collided, was approaching the intersection. The defendant had resided for a number of years a short distance from the intersection and both he and his guest passenger were familiar with it. In affirming a directed verdict in favor of the defendant, the Court stated:

"When he reached the intersection he failed to look to his right and he failed to stop. A jury could properly find either of these acts to constitute negligence. But could they properly find either or both acts to constitute willful or wanton misconduct? We think not. Mere negligence is not sufficient. The violation of a statute does not necessarily constitute willful or wanton misconduct.

"There was nothing about appellee's conduct suggesting reckless abandon. He did not rush into the intersection knowing that other cars were approaching. All the evidence is to the effect that he had no knowledge of the approach of the automobile which struck him. He was not warned either by others or by his own senses."

Counsel for plaintiff has brought to the Court's attention no cases in which the driver of an automobile was held liable for personal injuries sustained by a non-paying guest passenger unless there was evidence that the driver had knowledge of the dangerous conditions and nevertheless persisted in his course of conduct.

A case heavily relied on by counsel for plaintiff is Rickner v. Haller, 1954, 124 Ind.App. 369, 116 N.E.2d 525, 528. In that case the driver *saw* a stop sign but entered the intersection without making

any effort to stop, even though he could have done so. There was also evidence that the driver of the other automobile blew his horn several times before the collision, but that the defendant wholly ignored his warning. The Court, in affirming a judgment against the defendant, stated:

"* * * it was sufficient that appellant failed to stop before entering upon the intersection preferential highway, at which time he was *conscious* of the fact of the stop sign and that his conduct was in violation of the law and that, notwithstanding such *knowledge*, he proceeded to drive into the intersection with *conscious* indifference to the likelihood of resulting injuries to his guest." (Emphasis supplied).

The Court then distinguished the Rickner case from the case of Becker v. Strater, supra, by pointing out that in the Becker case there was a total failure of evidence that the driver was conscious of the stop sign before he entered the intersection. The Court went on to say:

"However, the facts in the Becker case, supra, and the case before us are diametrically opposite as far as the decisive factor in the cases are concerned, namely, the *conscious* (wilful or wanton) *misconduct* of the driver. In the Becker case, supra, there was a total failure of proof that, before entering the intersection, the driver was *conscious* of a stop sign, or of a law requiring him to stop at the intersection."

 In the case at hand, the defendant had no knowledge of the presence of the panel truck before the collision. He was clearly negligent in directing his attention away from his direction of travel and failing to keep a proper lookout, but, without warning by others or his own senses of existing conditions, it cannot be said that his negligent action constituted "wilful or wanton" misconduct. To hold otherwise would be to hold that the operator of a motor vehicle who, for any reason, momentarily takes his eyes from the highway in front of him, even for the purpose of looking at a highway sign, his speedometer, a traffic signal, or for any other reason, and an accident results therefrom, would be guilty of wanton or wilful misconduct. I fail to find any support for such a construction of the Indiana guest statute in any of the reported decisions.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter herein.

2. The defendants, Elmer Reeves and National Automobile Transporters Association, were not guilty of any wanton or wilful misconduct which proximately caused the collision and resulting injuries to the plaintiff.

3. The plaintiff is entitled to recover nothing of and from either of the defendants and the plaintiff's complaints should be dismissed with prejudice.

A judgment will be entered accordingly.