COMMONWEALTH vs. JEFFREY POND.

Franklin. November 10, 1986. — July 28, 1987.

Present: GREANEY, C.J., QUIRICO, & KASS, JJ.

*Practice, Criminal,* Grand jury proceedings. *Grand Jury. Evidence,* Grand
   jury proceedings. *Indecent Assault and Battery.*

Discussion with respect to the burden of proof and the elements necessary
   to support a criminal defendant's claim that the integrity of grand jury
   proceedings was so impaired as to require dismissal of indictments.
   [550-551]
A criminal defendant was not entitled to dismissal of indictments on the
   ground that the integrity of the grand jury proceedings was impaired by
   the prosecutor's failure to present evidence to the grand jury of certain
   inconsistencies and differences in the victim's statements to a police
   officer, where nothing in the record demonstrated that the prosecutor or
   his police witness knowingly or intentionally distorted or misstated any
   information, presented false or deceptive evidence in order to obtain
   indictments, or withheld any exculpatory evidence from the grand jury,
   and where, in any event, the defendant demonstrated no prejudice.
   [551-552]

INDICTMENT found and returned in the Superior Court De-
partment on January 23, 1985.

The case was heard by *John F. Murphy, Jr.,* J.

*Carol A. Donovan,* Committee for Public Counsel Services,
for the defendant.

*Charles K. Stephenson,* Assistant District Attorney, for the
Commonwealth.

QUIRICO, J. On January 23, 1985, the defendant, Jeffrey
Pond, was indicted for the crime of "indecent assault and
battery on a female child under the age of fourteen," allegedly
committed on November 30, 1984, in violation of G. L. c. 265,
§ 13B. Having waived his right to trial by jury, the defendant
was tried before a judge of the Superior Court, found guilty
of the offense charged, sentenced, and now appeals therefrom.[1]

---

[1] There was a second indictment charging the defendant with the crime
of "unlawful[] . . . sexual intercourse . . . with a female child under the age

The only question presented for decision is whether the trial judge committed error in denying a motion, filed by the defendant on the second day of his trial, asking that the indictment be dismissed by reason of alleged improper conduct by the Commonwealth in the presentation of the case to the grand jury.[2] We hold there was no error, and affirm the conviction.

The facts are briefly stated. On the afternoon of November 30, 1984, a three year old child, "Elizabeth," and her mother were returning home from a doctor's appointment. While walking they were approached by the defendant, and he conversed with the mother for a time. It is not clear from the record whether the mother and the defendant knew each other before that time. The mother and Elizabeth then walked home, where her three other children, ages six, fourteen and sixteen were living. Later that afternoon, the defendant appeared at the door and the mother allowed him in. In the early evening the mother left to pick up another woman who was living with her; the defendant left the house at the same time. The mother and the defendant then separated.

Before the mother returned to the house the defendant reappeared and the children let him in. He engaged in horseplay and wrestling with the children, and with Elizabeth in particular. After a while, saying he was going to put her to bed, the defendant took Elizabeth to a bathroom and from there into a bedroom. They remained there for a period which the older children estimated to be "a minute or two, maybe three" to "about five minutes." After they came out of the bedroom, the defendant asked Elizabeth to sit on his lap and she refused. He then picked her up and sat her on his lap. Shortly thereafter the mother returned with the other woman who also lived in the house. Elizabeth then jumped off the defendant's lap and ran to her mother.

---

of sixteen (16) years" in violation of G. L. c. 265, § 23. The defendant was found not guilty on that indictment.

[2] The motion to dismiss both indictments reads: "As reasons therefor, the defendant states that the evidence before the grand jury was erroneous, misrepresentational, misleading, and false. Further, numerous matters were concealed from the grand jury which would have, had they been considered by the grand jury, tended to exculpate the defendant."

Disturbed that the defendant had returned in the mother's absence as well as by information given to them by two of the older children, Elizabeth's mother and the other woman feigned telephone calls to their "boyfriends" in order to persuade the defendant to leave the house. The defendant told the mother that he had hoped he would be allowed to spend the night there and to go to sleep with Elizabeth. He also said that he would return the next morning to take Elizabeth and her six year old brother to a park. At that point the mother ordered him to leave and not to return.

After the defendant left, Elizabeth told her mother that the defendant had taken her into the bedroom, that he "laid on her belly," that while lying on the bed he bit her elbow, grabbed her legs, and that he had put his finger in her vagina or vaginal area. The mother examined Elizabeth's vaginal area and saw that "it was red up to her rectum." During that conversation Elizabeth showed her mother the defendant's watch which he had left hanging on her bedpost.

Elizabeth's mother then called the local police and several officers responded. One officer, John Laughton, took charge of the investigation. Another part-time officer, who was also a registered nurse and certified emergency medical technician, drove Elizabeth and her mother to a hospital emergency room for examination. Elizabeth was examined at about 10:00 P.M. by the doctor in charge of the emergency room. The examination was "essentially negative except for two areas." The first area was that of a small abrasion on the left elbow. The other area was the "vaginal area,. . . the anterior part [of which] was grossly abnormal [in that certain parts of the vaginal area] were both reddened, swollen and tense, indicating that there had been prior exposure in that area."[3]

---

[3] That same evening the doctor made "a smear. . . of the introital area" and took "a large black . . . hair . . . within an inch of the opening of the vagina" which, together with a urine sample taken from Elizabeth, and some of her articles of clothing, were sent to a laboratory of the Massachusetts Department of Public Safety for testing. Those test results were not received by the prosecutor from the laboratory until after this case was presented to the grand jury, so they could not, and did not, play any part in the evidence at that hearing.

On December 4, 1984, Officer Laughton made a videotape recording of an interview with Elizabeth about the events of November 30, 1984. Both the trial judge and the Appeals Court panel have viewed and heard the tape. Officer Laughton had no special training in the interviewing of children for cases of this type. At the outset only he and Elizabeth were present, and he found it difficult to get her to reply audibly, as opposed to shaking or nodding her head. Often she would not reply at all. Upon Elizabeth's request, her mother joined them. Although she spoke more freely with her mother present, there were still times when Elizabeth would not answer. At some point Elizabeth asked for a lollipop and Officer Laughton said she could have one when they finished talking. Later Elizabeth's mother promised to take her to McDonald's if she answered the questions. No one suggested to Elizabeth what her answers should be. There were several occasions when Elizabeth gave an answer which was different from or inconsistent with a previous matter. During the interview Elizabeth was permitted to use anatomically correct dolls. With the dolls Elizabeth identified portions of the body involved in a question or answer and demonstrated what she said had happened to her.

The videotaped interview permits the inference that on November 30, 1984, the defendant wrestled around with Elizabeth on the floor of the living room in the presence of her three siblings, that he then took Elizabeth to a bathroom and then to a bedroom, that he removed her clothes and dressed her in pajamas, and that while they were on or in a bed he fondled various parts of her body, including her vaginal area, with his hands or fingers.

On January 21, 1985, this case was presented to the grand jury by an assistant district attorney, with Officer Laughton as the sole witness. The officer's testimony was based on information he obtained by questioning Elizabeth, her mother, her siblings, the adult woman who lived in the same house, and other police and hospital personnel involved in the case. He told the grand jurors of his videotaped interview of Elizabeth and some of the difficulties he had in getting answers from her, but he did not play the tape for them, nor did he inform them of the several differences or inconsistencies in some of Elizabeth's answers.

The defendant contends that he is entitled to a dismissal of the indictment in question on the ground that the prosecution, in presenting the case to the grand jury, presented only evidence tending to establish probable cause to support the charge against him, but that it did not present evidence which would tend to exculpate him, viz., the differences and inconsistencies in some of Elizabeth's answers as recorded on the videotape which was then in the possession of the police or the prosecutor. The defendant contends that either Officer Laughton or the prosecutor should have played the tape for the grand jury. In retrospect, we agree that that might have been the wiser course. However, in the circumstances of this case the failure to do so does not constitute error entitling the defendant to a dismissal of the indictment.

The defendant relies on a line of cases which makes the right of a defendant to the dismissal of an indictment dependent upon "some showing that the integrity of grand jury proceedings has been impaired." *Commonwealth* v. *Gibson,* 368 Mass. 518, 525 (1975), quoting from *United States* v. *Cruz,* 478 F.2d 408 (5th Cir.), cert. denied sub nom. *Aleman* v. *United States,* 414 U.S. 910 (1973). He relies particularly on those cases which deal with the question whether "the integrity of grand jury proceedings has been impaired" by the prosecution's presentation of evidence which is false or deceptive as the result of distortions caused by the withholding of exculpatory evidence known to the prosecutor. *Commonwealth* v. *O'Dell,* 392 Mass. 445, 446-447 (1984). Most of the cases on this subject are collected and discussed in *Commonwealth* v. *Mayfield,* 398 Mass. 615, 619-622 (1986). We extract and summarize from that decision certain portions pertinent to the facts in the present case, without repeating the many helpful citations found in the original decision.

There is no comprehensive rule or statement as to what does and what does not constitute impairment of the integrity of the grand jury process. That must be decided case by case. The prosecutor's good faith use of inaccurate evidence, or his negligent use of false or inaccurate evidence, without more, probably would not require the dismissal of an indictment. While

there is no rule requiring prosecutors in all instances to bring exculpatory evidence to the attention of grand juries, their intentional withholding of the exculpatory portions of statements made by the defendant or by important witnesses, while introducing the inculpatory portions of such statements, may result in such a distortion as to permit or require the dismissal of an indictment. To support a claim that the integrity of the grand jury proceedings has been impaired, the evidence (1) must have been given with the knowledge that it was false or deceptive, (2) must have been given with the intention of obtaining an indictment, and (3) must probably have influenced the grand jury's determination to hand up an indictment. The defendant, as the moving party, has the burden of showing the existence of all three elements listed above. Failing to show those elements, the defendant is not entitled to a dismissal of the indictment against him.

The application of the rules and standards collected in the *Mayfield* decision to the present case is difficult for several reasons. The defendant's motion to dismiss alleges no facts under oath or with particularity, nor is it accompanied by an affidavit as to any such facts. "The burden is on the defendant[ ], of course, to establish the facts, if any, necessary to support a motion to dismiss." *Commonwealth* v. *Benjamin,* 358 Mass. 672, 676 n.5 (1971). See G. L. c. 277, § 47A, and Mass.R.Crim.P. 13, 378 Mass. 871 (1979). Moreover, in denying the motion in the present case the judge made no statement, oral or written, of any facts found by him as the basis for its denial. The parties have made no issue of the absence of affidavits by the defendant, or the absence of findings by the judge as to the factual basis of the motion to dismiss or as to its denial. Both sides briefed and argued the sole issue whether the Commonwealth impaired the integrity of the grand jury proceeding by reason of Officer Laughton's failure to inform the grand jurors of the differences or inconsistencies in some of Elizabeth's answers in the course of the videotaped interview of December 4, 1984.

Having read the record on appeal, which included a transcript of the grand jury proceedings, and having seen and heard the

videotape of Officer Laughton's interview of Elizabeth, we conclude:

(1) the evidence before the grand jury was sufficient to warrant a finding of probable cause as to the offense charged in the indictment in question, *Commonwealth* v. *McCarthy,* 385 Mass. 160, 163 (1982);

(2) the mere fact that the testimony of Officer Laughton, the sole witness before the grand jury, was almost entirely based on hearsay does not require the dismissal of the indictment. *Commonwealth* v. *Gibson,* 368 Mass. at 522-525. *Costello* v. *United States,* 350 U.S. 359 (1956);

(3) there is nothing in the record to the effect that at or during the grand jury proceedings the prosecutor or the sole witness, Officer Laughton, knowingly or intentionally: (a) misstated or distorted any statements attributed to Elizabeth or to any other person, (b) used or offered any false or deceptive testimony for the purpose of obtaining an indictment, or (c) withheld any exculpatory evidence from the grand jury. See *Commonwealth* v. *Salman,* 387 Mass. 160, 166-167 (1982); *Commonwealth* v. *Connor,* 392 Mass. 838, 854 (1984); *Commonwealth* v. *McGahee,* 393 Mass. 743, 746-748 (1985); *Commonwealth* v. *Reddington,* 395 Mass. 315, 319-320 (1985).

The conclusions stated above require the disposition of this appeal adversely to the defendant. In light of the other evidence submitted to the grand jury, we further conclude that the defendant has failed to show that the allegedly false or deceptive evidence prejudiced him by influencing the grand jury to return an indictment which it would not otherwise have returned. *Commonwealth* v. *Mayfield,* 398 Mass. at 621-622.

Upon all that is before us, we conclude that the defendant has not met his burden of proving that anything which the prosecution did or for which it was responsible amounted to an impairment of the integrity of the grand jury proceeding in this case. There was no error in the trial judge's denial of the defendant's motion that the indictment be dismissed.

*Judgment affirmed.*