COMMONWEALTH vs. WILLIAM D. PETRAS
(and five companion cases [1]).

No. 87-1146.

Middlesex.    September 8, 1988. — October 17, 1988.

Present: GREANEY, C.J., BROWN, & KASS, JJ.

*Practice, Criminal*, Indictment, Dismissal, Grand jury proceedings, Disclosure of evidence, Argument by prosecutor. *Grand Jury. Evidence*, Grand jury proceedings.

Criminal defendants were not entitled to dismissal of indictments on the ground that the integrity of the grand jury proceedings was impaired by the prosecutor's failure, after being warned once before by another judge, to bring to the grand jury's attention an inconsistent statement by the victim at the probable cause hearing on the cases, where nothing in the record demonstrated that the prosecutor knowingly distorted any evidence or withheld exculpatory information, which, if revealed, would have influenced the grand jury not to indict, and where, in any event, the defendants demonstrated no prejudice. [487-490]

INDICTMENTS found and returned in the Superior Court Department on June 25, 1986.

Motions to dismiss were allowed by *Hiller B. Zobel*, J.

*David R. Marks,* Assistant District Attorney, for the Commonwealth.

*William G. Burke* for William D. Petras.

GREANEY, C.J.   A Superior Court judge dismissed with prejudice indictments which charged each of three defendants (William D. Petras, William Marrocco, and Charles Camirand) with aggravated rape and indecent assault and battery. The judge concluded that the ultimate sanction was necessary because the prosecutor, after being warned once before by another

---

[1] One of the companion cases is against Petras, two are against William Marrocco, and two are against Charles Camirand.

judge, failed to bring to the grand jury's attention an inconsistent statement made by the victim at the probable cause hearing on the cases. The Commonwealth has appealed. We reverse the orders.

The eighteen year old victim's (we shall call her Carol) testimony of the incident and other relevant background information can be summarized as follows. Carol had been acquainted with the defendant Camirand. Camirand invited Carol and her girlfriend (also eighteen) to go out with him on the evening of August 2, 1985. Camirand, accompanied by the defendants Petras and Marrocco, picked up the two women in a van. The back of the van was equipped with a bar, two captain's chairs, two "beanbag" chairs, and a mattress. The group went to a lounge in Newburyport, where the men drank heavily. When the group left the lounge, the three men appeared to Carol to be intoxicated.

Camirand, the van's driver, ignored the young women's requests to be taken home, and he eventually drove the van down a deserted road. He took Carol's friend outside the van to talk to her, leaving Carol alone in the back of the van with Petras and Marrocco. According to Carol, Petras and Marrocco "jumped" on the mattress on which she was sitting. Marrocco positioned himself "up towards [her chest]," while Petras was down "towards [her] legs." Marrocco began kissing Carol and pulling off her shirt and bra. She pushed him away and pleaded with him to stop. Marrocco held her down, began to kiss her breasts, and attempted to force his penis into her mouth. While Marrocco restrained Carol, Petras unbuttoned and pulled off her jeans and underpants. Petras placed his fingers and then his tongue into Carol's vagina. He then inserted his penis into her vagina.

The attack stopped when Carol's girlfriend returned to the van. The group left in the van. The women were upset. Camirand drove Marrocco home and then stopped the van again. He then went into the back of the van and asked Carol to "give him some satisfaction." The two women fled the van and ran into some nearby woods. They eventually reached the security office of a factory and called the police. Carol was

taken to the Wilmington police station and then to the Lahey
Clinic, where she was examined by a physician. While at the
clinic, Carol wrote out and signed for a policewoman a descrip-
tion of the incident.

In her written statement for the police, Carol referred to
Petras as the one who had "tried" to have sexual intercourse
with her. Later in the same statement, she identified Petras as
the "one who had intercourse with her." The hospital record
contained an entry that noted "? of penetration" and further
stated (under the heading "clinical notes") that "the patient
thinks no vaginal penetration."

We next summarize the procedural history of the case. Carol
testified about the incident along the lines outlined above at a
lengthy probable cause hearing in a District Court. She was
cross-examined by counsel for each of the three defendants
and was impeached with the information in her police statement
and the hospital record. At this hearing, she indicated that
Marrocco, while holding her down, had tried to insert his penis
into her mouth but was unsuccessful, as she had "shut her
mouth" and turned her head away. In cross-examination by
Marrocco's counsel, she further testified as set forth in the
margin.[2] At the close of the probable cause hearing the prose-
cutor indicated to the District Court judge that the Common-
wealth was proceeding against Marrocco solely on a joint ven-
ture theory.[3]

---

[2]     COUNSEL FOR MARROCCO: "[Carol], Mr. Marrocco didn't penetrate
your vaginal area with any part of his body, did he"?
     CAROL: "Mr. Marrocco tried getting his penis into my mouth, but
I wouldn't open it."
     COUNSEL FOR MARROCCO: "He didn't penetrate any part of your
body with any part of his body, did he?"
     CAROL: "Mr. Marrocco?"
     COUNSEL FOR MARROCCO: "Yes."
     CAROL: "No. He was up — he was on the top half of me."

[3] The prosecutor made this point in the following statement to the judge:

     "I'll get right to the point. Marrocco's charged with rape on a joint
     venture theory, that he along with Petras raped [Carol]. He held
     [Carol] down so that she could not do anything except try to squeeze
     back in the rear of the van. He held her hands, as she testified, as

The prosecutor secured indictments against the three men from a grand jury based on Carol's testimony of the incident. Petras moved to dismiss the indictments against him due to the failure of the prosecutor to advise the grand jury of the information (quoted above) contained in Carol's written statement to the police and in the hospital record. After a hearing, a Superior Court judge (not the judge whose order led to this appeal) allowed Petras' motion and dismissed the indictments against him without prejudice. The judge reasoned, based on the decided cases as he viewed them, that the grand jury should have been apprised of the inconsistencies, which, he concluded, might have affected their decision to indict Petras.

The prosecutor decided not to appeal from the dismissal because of the time that the appeal would have taken and because reindictment had been permitted. He entered nolle prosequis on the indictments against Marrocco and Camirand and went before another grand jury with Carol to secure new indictments against all three defendants. Carol's testimony before the second grand jury repeated her testimony at the previous proceedings, except with respect to Marrocco's conduct. Specifically, she testified, as set forth below, that Marrocco had in fact forced his penis into her mouth.[4] Despite this addition to her testimony, the prosecutor did not allude to Carol's probable cause testimony about Marrocco's attempt to penetrate her. See note 2, *supra*. However, the prosecutor did bring out the inconsistencies concerning the actions of Petras thought material by the first judge. Based on Carol's testimony, the second grand jury voted the indictments at issue.

The three defendants next moved to dismiss the second round of indictments on the ground that the integrity of the grand

Mr. Petras committed his acts of rape."

Camirand is apparently accused on a theory of accessorial liability, based on his alleged activity as driver and lookout and his alleged actions in luring Carol's girlfriend outside of the van so that she could not interfere in the assaults about to take place inside.

[4]      THE PROSECUTOR: "What was Mr. Marrocco doing while Mr. Petras was doing that to you?
        CAROL: "He was trying to get his penis into my mouth, and then he succeeded."

jury had been impaired because the prosecutor (a) had not sufficiently cured the deficiencies described by the first judge and (b) had improperly withheld Carol's testimony at the probable cause hearing that Marrocco had not violated her.[5]

After a hearing, a second Superior Court judge dismissed the indictments charging each defendant with aggravated rape and indecent assault and battery. The judge essentially concluded that the defendants had demonstrated that the integrity of the second grand jury had been compromised. The judge deemed the new fact pertaining to Marrocco, as testified to by Carol before the second grand jury, when left unbalanced by her inconsistent testimony at the probable cause hearing, a significant distortion caused by the prosecutor's intentional withholding of exculpatory evidence. The judge further concluded that the failure to inform the grand jury of this inconsistency, considered with the fact that Petras' indictments had already been dismissed once, called for dismissal with prejudice of the aggravated rape and indecent assault charges against all defendants as the only appropriate sanction.[6] We do not agree with these conclusions.

A prosecutor may not withhold known exculpatory information which could undermine the credibility of an important witness in the eyes of a grand jury and, consequently, affect their decision to indict. See *Commonwealth* v. *O'Dell*, 392 Mass. 445, 446-447 (1984); *Commonwealth* v. *Connor*, 392 Mass. 838, 854 (1984); *Commonwealth* v. *McGahee*, 393 Mass. 743, 746-747 (1985); *Commonwealth* v. *Mayfield*, 398 Mass. 615, 620-622 (1986); *Commonwealth* v. *McGowan*, 400 Mass. 385, 388-389 (1987). The prosecutor here was acutely aware from the prior dismissal that the next grand jury to hear

---

[5] A third ground alleged in the defendants' motions to dismiss concerned allegedly negative results obtained in "Rape Kit" tests. That ground was not argued to the judge and is not asserted on appeal.

[6] The judge's reasoning as to the dismissal of the indictments against Petras and Camirand reads as follows: "Because the indictments of Petras resulted from a presentation inexcusably inadequate in constitutional terms, and because validity of the other defendants' indictments depends on the constitutionality of the Petras' indictments, *the several motions of each defendant are allowed* . . ." (emphasis in original).

the cases should be alerted to possible inconsistencies in Carol's version of the incident. He complied with the order of the first Superior Court judge to bring to the attention of the second grand jury the information pertaining to Petras contained in Carol's statement to the police and in the hospital record.[7] Having done that, the prosecutor continued to focus on Petras as the principal actor in the aggravated rape. He sought to indict Marrocco for rape as a joint venturer based on Carol's testimony that Marrocco held her down while Petras removed her jeans and underpants and forcefully entered her vagina with his fingers, tongue, and penis.[8] See note 3, *supra*. There is basis to argue (as the Commonwealth does) that the prosecutor might not have considered the testimony before the second grand jury truly inconsistent because it was given in the context of Carol describing Marrocco pinning her upper body down and not entering her vagina. In any event, whether Marrocco succeeded in inserting his penis into Carol's mouth was a fact which can fairly be said was not considered crucial by the prosecutor to Marrocco's indictment for aggravated rape on a joint venture theory.[9]

The record, therefore, does not justify a conclusion that the prosecutor deliberately omitted the probable cause testimony with the "purpose prepense" of obtaining indictments. *Commonwealth* v. *Bobilin*, 25 Mass. App. Ct. 410, 413 (1988). See *Commonwealth* v. *Mayfield*, 398 Mass. at 621; *Commonwealth* v. *Seminara*, 20 Mass. App. Ct. 789, 793 (1985); *Commonwealth* v. *Childs*, 20 Mass. App. Ct. 985, 987 (1985); *Commonwealth* v. *Pond*, 24 Mass. App. Ct. 546, 551-552 (1987). At the worst, the record indicates that the prosecutor may have been negligent in his failure to comprehend all the

---

[7] Counsel for Petras argues that the prosecutor did not adequately cure the deficiencies identified by the first judge. We conclude that he did.

[8] The indecent assault and battery charge against Marrocco stemmed from Carol's testimony about his kissing, the fondling of her breasts, and the attempt to force his penis into her mouth.

[9] Similarly, it had nothing to do with the indictments against Camirand, who, as has been noted, was being charged as a participant with both Petras and Marrocco in the assaults based on Carol's testimony that he was the driver, lookout, and decoy. See note 3, *supra*.

nuances of Carol's testimony arguably contradictory in detail, in the context of proceedings which, unlike a trial before a petit jury, are meant to be accusatory and nonadversary. We assume that a negligent failure by a prosecutor to disclose exculpatory information to a grand jury may, in some circumstances, rise to a level that cannot be condoned. However, we do not consider any oversight here to be one that requires the ultimate sanction of dismissal with the consequent effect that stringent remedy has of infringing upon the public's right to see persons accused of serious crimes brought to trial. See *Commonwealth* v. *Cinelli*, 389 Mass. 197, 210 (1983). To hold otherwise in this case would run counter to the grand jury's primary role as "a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." *Blair* v. *United States*, 250 U.S. 273, 282 (1919).

This view of the case is supported by another consideration. It cannot be persuasively argued on this record that had the added testimony been presented, the second grand jury would not have returned the indictments. Carol's testimony before that grand jury was both in reasonable detail and, in its material aspects, consistent with her testimony at the probable cause hearing and before the first grand jury. Her descriptions of the actions of Petras and Camirand did not vary. We doubt that knowledge of her inconsistent testimony as to one aspect of Marrocco's conduct would have so undermined her credibility in the eyes of the grand jury that they would have rejected her testimony against all the defendants and declined to return an indictment for rape or for indecent assault and battery. Cf. *Commonwealth* v. *Champagne*, 399 Mass. 80, 85 (1987).

We conclude: (a) that the evidence before the second grand jury was sufficient to warrant a finding of probable cause as to the aggravated rape and indecent assault and battery indictments against each defendant, see *Commonwealth* v. *Pond*, 24 Mass. App. Ct. at 552, and cases cited; and (b) that the defendants have not met the "heavy burden" imposed on them,

see *Commonwealth* v. *Shea*, 401 Mass. 731, 734 (1988), of demonstrating that the prosecutor knowingly distorted that evidence or withheld exculpatory information, which, if revealed, would have influenced the grand jury not to indict.[10]

The orders dismissing the aggravated rape and indecent assault and battery indictments against each defendant are reversed.

*So ordered.*

---

[10] Finally, because the Commonwealth has stated that its rape case against Marrocco is predicated on a joint venture theory, we think, in fairness, that it should be limited to that theory at trial. The Commonwealth will not be able to contend at trial that Marrocco raped Carol by inserting his penis into her mouth.