Hillman, J.
The defendants Thomas Levesque (Levesque) and Julie Ann Barnes (Barnes) are charged with six counts of manslaughter for their conduct in starting and failing to report a fire in the Worcester Cold Storage Building (“warehouse”) in the City of Worcester. Six Worcester fire fighters perished in the fire in that warehouse. The defendants now move to dismiss the indictments against them on two grounds; first, that the grand jury that returned the indictments was presented with insufficient evidence to believe that a crime was committed or that defendants committed a crime, Commonwealth v. McCarthy, 385 Mass. 160 (1982); and second, that the integrity of the grand jury proceeding was impaired by an unfair and misleading presentation of evidence. See Commonwealth v. O'Dell, 392 Mass. 445 (1984). For the reasons stated below, the motions are ALLOWED.
FACTS
For several months prior to December 3, 1999, the defendants lived periodically, as trespassers, in a room on the second floor of the warehouse, which had been abandoned for some time. The warehouse had a few windows, most of which had been boarded up, and very little ventilation. The interior consisted of several windowless, compartmentalized small rooms that had been designed for storage. The room occupied by defendants contained some personal effects, including clothing, blankets, a radio, and a heater. Since there was no electricity, candles were used for light.
On October 27, 1999, Worcester police K-9 officer Daniel Sullivan (“Officer Sullivan”) responded to a complaint about the conditions in the warehouse. When Officer Sullivan opened the door to the ware *469 house he was “overcome by the smell of rotting garbage, feces and urine.” Inside he found a large room with “piles of garbage bags and numerous take-out food containers with half eaten meals thrown all over the place. Next to a far wall were piles and piles of human waste.” In a second room, Officer Sullivan found a makeshift bedroom. In the bedroom was a closet containing “a box overflowing with cat feces.” At that point, Officer Sullivan decided to terminate the search out of concern for the health and safety of his dog. Local authorities took no further action to investigate the building.
At approximately 4:15 to 4:30 p.m. on December 3, 1999, Barnes and Levesque were in the room that they occupied at the warehouse. Levesque, who had just smoked a marijuana cigarette and Barnes, who was coloring, were arguing about whether or not to have sex. During the argument, which included some pushing and struggling, one of them knocked over a lit candle that started a fire. The fire spread before the couple realized what had happened.
Barnes and Levesque tried unsuccessfully to stamp out the flames, then began to search for the cat and dog who lived in the warehouse with them. The search was futile, and the two defendants thereafter left the building. They did not report the fire to the authorities despite having ample time and opportunity to do so.
The fire was not reported until the first alarm was called in at 6:13 p.m. When they responded to the alarm, firefighters were informed that there might be some homeless persons inside the building. The firefighters entered the building to find out whether there was anyone inside and to evaluate the fire in order to determine how to fight it. It was during these efforts that the fire intensified and six firefighters died.
At a December 14, 1999 Worcester Fire Department Board of Inquiry, Deputy District Chief Michael McNamee (“McNamee”) testified that when he arrived at the warehouse, the “smoke conditions were light.” When he made his way to the second floor the firefighters “were calling for water and the water did come, so I figured they were going to be alright working on the fire.” McNamee testified that “all of a sudden things went bad. Things went from light haze to black and hot.” At that point, deciding that conditions had deteriorated too fast, McNamee ordered everyone out of the building. McNamee told the Board that “when it went bad, it went bad in a matter of three to four seconds. It went from light haze to zero visibility and heat.” On February 4, 2000, defendants’ counsel jointly sent the Commonwealth copies of McNamee’s report and a request that the report, along with other information about the design and condition of the building and the nature of the fire, be presented to the grand jury. Counsel suggested that these facts “need to be presented in order that the grand jury receive a full and fair presentation, free of distortion.” On February 17, 2000, when the grand jury heard evidence in this case, the Commonwealth did not present the grand jurors with McNamee’s report or any of the other information requested by defense counsel.
The Commonwealth provided the grand jury with testimony from Massachusetts State Police Sergeant Robert O’Keefe (“Sergeant O’Keefe”), an expert in arson and fire investigations. Sergeant O’Keefe, who was not personally familiar with the conditions that existed at the time of the fire, based his opinions as to origin and cause primarily on statements provided by witnesses. He told the jurors that “in my opinion, the significance of the delay in reporting has a great deal to do with what kind of fire the Worcester Fire Department got to that day.” Sergeant O’Keefe acknowledged that he was “not familiar with the general conditions upon the initial fire response in terms of where fire was noted and where smoke was noted with respect to the building." Sergeant O’Keefe also informed the grand jurors that the fire fighters had entered the building at least partly “because they had received information that there were possibly people present in there,” an assertion not included in McNamee’s statement. McNamee indicated only that the fire fighters entered the building to attempt to put out the fire.
DISCUSSION
I. The sufficiency of the evidence presented to the grand jury
In order for the indictments to survive this motion, the Commonwealth must show that the grand jury received sufficient evidence to establish the identity of the defendants and probable cause to arrest them. See Commonwealth v. McCarthy, 385 Mass. 160 (1982). To indict the defendants, the grand jury did not need evidence warranting a finding of the defendants’ guilt beyond a reasonable doubt. It needed only evidence establishing probable cause to arrest. See Commonwealth v. Roman, 414 Mass. 642, 643 (1993). Probable cause to arrest “requires more than mere suspicion but something less than evidence sufficient to warrant a conviction.” Commonwealth v. Hason, 387 Mass. 169, 174 (1982). Thus, the evidence before the grand jury must consist of reasonably trustworthy information sufficient to warrant a reasonable or prudent person to believe that the defendant has committed the offense charged. See Commonwealth v. McCarthy, supra, at 162-63; Commonwealth v. Club Caravan, Inc., 30 Mass.App.Ct. 561, 566-68 (1991). In this case, the question is whether the Commonwealth presented the grand jury with sufficient information to find probable cause that the defendants committed involuntary manslaughter.
There is no statutory definition of manslaughter in Massachusetts; its elements are derived from the common law. See Commonwealth v. Godin, 374 Mass. 120, 126 (1977). Our courts have defined manslaughter as ”... an unlawful homicide, unintentionally caused by an act which constitutes such a disregard of the probable harmful consequences to another as to con *470 stitute wanton or reckless conduct.” See Commonwealth v. Campbell, 352 Mass. 387, 397 (1967).
In this case, the Commonwealth’s theory is that the defendants committed involuntary manslaughter under the principles set forth in Commonwealth v. Welansky, 316 Mass. 383. “The essence of wanton and reckless conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another.” Id. at 398. The Commonwealth maintains that the defendants’ conduct in starting a fire and not reporting it was a conscious disregard of a risk of substantial harm to others. Thus, the Commonwealth contends that the defendants had a duty to report the fire, and that failure to report the fire created the necessary degree of likelihood of substantial harm to others to constitute wanton and reckless behavior.
Ordinarily, a court will not review the competency or sufficiency of the evidence before a grand jury. See Commonwealth v. O’Dell, 392 Mass. 445, 452 (1984). The Supreme Judicial Court has held, however, that an indictment cannot stand unless, at a minimum, it is supported by evidence sufficient to establish probable cause to arrest. Id. Thus, the grand jury’s failure to hear any evidence of criminal activity by the defendant may justify dismissal of the indictment. See Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). The question here is whether the grand jury was presented with sufficient evidence of probable cause to believe that 1) defendants had a duty to report the fire or 2) that defendant’s failure to report the fire constituted wanton and reckless conduct.
Duty to Report
The act of starting the fire, while attributable to one or both of the defendants, was accidental. The Commonwealth concedes that, in Massachusetts, there is no statutory duty to report a fire. The Commonwealth argues, however, that in this case the accidental starting of a fire triggered a corresponding duty to report that fire, and that defendants’ failure to so report constituted wanton and reckless conduct involving a high degree of likelihood that substantial harm would result to others. Specifically, the Commonwealth alleges that the defendants’ conduct in not reporting the fire created the likelihood of a serious degree of harm to the six firefighters who perished in the blaze.
A question exists as to whether there is any duty to report a fire that one has started accidentally. There are criminal penalties for those who “willfully and maliciously” set fires (G.L.c. 266, §§1,2 and 5), and for those who set certain fires “wantonly and recklessly” (G.L.c. 266, §7). Moreover, G.L.c. 265, §13 1/2D provides additional penalties if a firefighter is injured in responding to any fire which could be considered a violation of G.L.c. 266, §§1, 2, 5 or 7. There are also statutoiy criminal penalties for one who “sets or increases a fire upon the land of another whereby the property of another is injured, or who negligently or willfully suffers any fire on his own land to extend beyond the limits thereof.” G.L.c. 266, §8.[1]
Thus, there are statutory criminal penalties for one who negligently starts afire. Consequently, as axiomatic and fundamentally compelling as it seems to be to hold that a legal duty exists to report a fire that one has started, either intentionally or accidentally, that duty is not straightforward, and necessarily implicates constitutional considerations. Furthermore, there is considerable room for discussion on what constitutes “reporting," with the inevitable line drawing and “what-iffing” that is dependent upon determining when, if, and how one reported a fire.[2]
Massachusetts courts have not found a duty to report or extinguish a fire where defendants’ failure to do so was merely negligent. See Commonwealth v. Cali, 247 Mass. 20 (1923). In Cali, a conviction under G.L.c. 266, §10, for burning a building with the intent to injure an insurer, was based upon a showing that although the defendant might have negligently or accidentally started a fire, he then, with the intent of defrauding his insurer, left the fire without reporting it or attempting to extinguish it, with the purpose of allowing the building to burn. In that case, the court instructed the jury:
If a man does start an accidental fire what is his conduct in respect to it? A question might arise — as if after the fire has started accidentally, and he then has it within his power and ability to extinguish the fire and he realizes and knows that he can, and then he forms and entertains an intent to injure an insurance company he can be guilty of this offence. It is not necessary that the intent be formed before the fire is started.
Id. at 24-25. Thus, the court instructed the jury that, even if a fire started accidentally, a subsequent intentional decision not to extinguish that fire might create the necessary intent for the crime. The Court stated, however, that if the defendant had “merely neglected in the emergency of the moment to act, his negligence was not proof of a purpose to commit the crime charged.” Id. at 25. In a more recent decision, the Appeals Court reaffirmed that, in order to find the criminal intent to commit arson, “either the setting of the fire or the failure to extinguish or report it had to be intentional and not merely negligent.” See Commonwealth v. Glenn, 23 Mass.App.Ct. 440, 444 (1987). Here, the grand jury was presented with no evidence that defendants’ actions in starting and failing to report the fire were intentional rather than negligent. Consequently, this court finds no evidence before the grand jury from which a reasonable person could find probable cause to believe that defendants had a duty to report the fire. See Welansky at 789. See also Sandler v. Commonwealth, 419 Mass. 334, 337 (1995) (reckless conduct must be based on high degree of risk that death or serious bodily injury will result from a *471 defendant’s action or inaction when under a duty to act (emphasis added)).

Wanton and Reckless

A duty may be found where defendants’ actions were so wanton and reckless as to create a high degree of likelihood that substantial harm would result to another. See Commonwealth v. Depradine, 42 Mass.App.Ct. 401, 406 (1997), quoting Commonwealth v. Sires, 413 Mass. 292, 303 n.14 (1992). “Conduct does not become criminal until it passes the borders of negligence and gross negligence and enters into the domain of wanton or reckless conduct.” Commonwealth v. Welansky, supra at 400.[3] The words “wanton” and “reckless” involve “a degree of risk and a voluntary taking of that risk so marked that, compared to negligence, there is not just a difference in degree but also a difference in kind.” See Sandler v. Commonwealth, 419 Mass. 334, 337 (1995); Commonwealth v. Welansky, supra at 399; Commonwealth v. Sires, 413 Mass. 292, 303 n. 14 (1992). Here, the grand jury received no evidence of such conduct.
Whether a duty exists is a question of law for the court. See O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000), quoting Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). Thus, a nightclub owner has been found to have a duty not to engage in conduct indicating “wanton and reckless disregard of the safety of his patrons.” Welansky at 401. Similarly, an employer has a duty to his employees not to engage in acts or omissions which “constitute a disregard for the probable harmful consequences and loss of life as to amount to wanton or reckless conduct.” See Commonwealth v. Godin, 374 Mass. 120, 127 (1977) (16,000 pounds of fireworks stored in the building at the time of the explosion). Also, the felonious distribution of heroin to a known addict who died from injecting the drug has been held a proper basis for an indictment of involuntary manslaughter. See Commonwealth v. Catalina, 407 Mass. 779, 791 (1990).
In contrast, where there was evidence that the Metropolitan District Commission knew that the absence of drain covers in a dark tunnel created a risk of danger, and failed to correct the conditions in the tunnel, their inaction “did not present the level of dangerousness that warrants liability for reckless or wanton conduct.” See Sandler v. Commonwealth, 419 Mass. 334, 337 (1995), and cases cited establishing reckless conduct in tort cases. Id. at 339, n.4.
“The court will not hold the defendant liable for all possible injury, no matter how remote.” See Glick v. Prince Italian Foods of Saugus, Inc., 25 Mass.App.Ct. 901, 902 (1988). The critical test for involuntary manslaughter is “whether, in the circumstances known to the defendant, a reasonable person would recognize that the conduct under scrutiny ‘involves a high degree of likelihood that substantial harm will result to another.’ " See Commonwealth v. Depradine, 42 Mass.App.Ct. 401, 406 (1997). It is not enough that the defendants themselves did not recognize the risk presented by their conduct. Id. “Even if a particular defendant is so stupid [or] so heedless . . . that in fact he did not realize the grave danger, he cannot escape the imputation of wanton or reckless conduct in his dangerous act or omission, if an ordinary normal man under the same circumstances would have realized the gravity of the danger.” Id., quoting Commonwealth v. Welansky, 316 Mass. at 398-99 (1944). In this case, the pertinent evidence would not warrant a finding of probable cause that the defendants’ failure to report the fire rose to the elevated standard of a high degree of likelihood that substantial harm would result. See Commonwealth v. Bouvier, 316 Mass. 489, 496 (1944).
Although “questions of negligence involving issues of what is reasonably foreseeable are ordinarily left to the jury, there are instances where the judge may decide them as a matter of law, where no rational view of the evidence would warrant a finding of negligence.” See Glick v. Prince Italian Food of Saugus, Inc., 25 Mass.App.Ct. 901 (1988). This appears to be such a case. See Sandler v. Commonwealth, 419 Mass. 334, 336 (1995) (“Our long-standing custom has been to measure reckless conduct by the same test whether the conduct is alleged as the basis for liability in tort or as the basis for guilt of involuntary manslaughter”). Here, it was known to the defendants that the cold storage building was unoccupied. Therefore, their failure to report the fire must be distinguished from a case in which a defendant intentionally threw a lighted newspaper into the cluttered hallway of an inhabited building, setting the building on fire. See Commonwealth v. Martinez, 393 Mass. 612, 614 (1985) (throwing lighted newspaper into the hallway of an occupied building could be “reasonably regarded as such a disregard of probable consequences to others as to be wanton and reckless conduct”). Here, however, where the building was unoccupied, there was no evidence that the fire in defendants’ room created the high degree likelihood of substantial harm to other occupants.
The standard for the wanton and reckless conduct required for a charge of involuntary manslaughter is “whether an ordinary man under the same circumstances would have realized the gravity of the danger." Welansky, supra, at 398. Thus, to find probable cause of reckless and wanton behavior, the grand jurors had to find that failure to report the fire created a “known or reasonably apparent” risk of death or great bodily injury, and that the harm was “a probable consequence of the defendant’s election to run that risk or his failure reasonably to recognize it.” Commonwealth v. Sandler 419 Mass. 334, 336 (1995). That this fire became a tragedy of unmeasurable proportion cannot be argued. However, this court must focus on the conduct of the defendants not the tragic consequences. “What must be intended is the conduct, not the resulting harm.” Welansky, supra, at 398.
*472 Despite the tragic results, the conduct of these defendants did not rise to the level of wanton and reckless behavior. It is beyond dispute that firefighters do not ordinarily lose their lives in the course of fighting a fire — even a very serious fire. In fact, the firefighters who responded to this alarm and the Deputy District Fire Chief at the scene were unable to foresee the severity of the fire or the speed at which conditions were deteriorating. Where professionals trained to evaluate fires were unable to foresee the risks involved when they arrived to fight the fire, this court cannot reasonably attribute such knowledge to these defendants at the time the fire began. In this case, it is clear that not only a reasonable person, but a reasonable experienced fire fighter, would have failed to realize the gravity of the danger. Welansky at 398. As a matter of law, therefore, this court finds no justification for attributing to these defendants knowledge of the potential gravity and severity of the risk posed by the fire they had accidentally started.
Where defendants had no duty to act, and where defendants’ failure to act does not satisfy the standard for wanton and reckless conduct, no rational view of the evidence would permit a reasonable person to find probable cause to arrest these defendants for involuntary manslaughter. Consequently, the indictments must be dismissed.
Integrity of Grand Jury Proceedings
Defendants also argue that the indictments against them should be dismissed because the Commonwealth’s failure to provide the grand jury with McNamee’s report from the December 14, 1999 Worcester Fire Department Board of Inquiry impaired the integrity of the grand jury proceedings. See Commonwealth v. O’Dell, 392 Mass. 445 (1984) (“grand jury proceeding was impaired by unfair and misleading presentation to the grand jury of a portion of a statement attributed to the defendant without revealing that an exculpatory portion of the purported statement had been excised”). Defendants contend that McNamee’s testimony about the condition of the fire when fire fighters arrived would have undermined the credibility of the Commonwealth’s expert witness, Sergeant O’Keefe, as to the foreseeability of the severity of the fire and the effect of the defendants’ delay in reporting the fire. See Commonwealth v. Connor, 392 Mass. 838, 854 (1984).
Prosecutors are not required to bring exculpatory evidence to the attention of grand jurors. See Comm. v. O’Dell, 392 Mass. 445, 477 (1984). To support a claim that the integrity of the grand jury proceedings has been impaired, the evidence “(1) must have been given with the knowledge that it was false or deceptive, (2) must have been given with the intention of obtaining an indictment, and (3) must probably have influenced the grand jury’s determination to hand up an indictment.” Commonwealth v. Pond, 24 Mass.App.Ct. 547, 551 (1987). The burden is on the defendant to show the existence of all three elements. Id. Here, where there is no evidence that Sergeant O’Keefe knowingly presented the grand jurors with information that was false or deceptive, defendants have failed to satisfy that burden.
In Commonwealth v. O'Dell, supra, the Commonwealth presented the grand jury with a selectively edited version of a statement defendant O’Dell, the driver of the getaway van, made to the police. Thus, the grand jury heard O’Dell’s admission that he had driven a companion to the store, waited for him to come out, and then, at his companion’s urging, quickly driven him away. The Commonwealth, however, excised those portions of the statement in which O’Dell denied knowing either that his companion intended to rob the store or that his companion had committed a robbery when he returned to the van. O’Dell told police that he thought his companion “may only have done some shoplifting.” O'Dell at 448-49. In that case, the Supreme Judicial Court held that the edited presentation of O’Dell’s statement “tended to distort the meaning of that portion of the defendant’s statement that was repeated to the grand jury.” Id.
Here, in contrast, there is no suggestion that Sergeant O’Keefe’s testimony was false or deceptive. Sergeant O’Keefe, a trained fire investigator, told the grand jurors that in his opinion “the significance of the delay in reporting has a great deal to do with what kind of fire the Worcester Fire Department got to that day.” In response to grand jurors’ questions about the limited amount of oxygen in the building, Sergeant O’Keefe explained that, even if the flames had died down by the time fire fighters arrived, the delay in reporting permitted the fire to smolder and spread within the building, thus increasing the severity of the risk. Nothing in the record indicates that at or during the grand jury proceedings either the prosecutor or any of the witnesses, including Sergeant O’Keefe, knowingly or intentionally misstated or distorted any statements attributed to other people, or themselves used or offered false or deceptive evidence. See Commonwealth v. Pond, 24 Mass.App.Ct. 546, 552 (1987). Thus, there is no evidence that the Commonwealth or its witnesses intentionally provided the grand jury with false or deceptive testimony. While “it might have been the wiser course” to provide the grand jurors with McNamee’s report “failure to do so does not constitute error entitling the defendant to a dismissal of the indictment.” Id.
ORDER
For tire foregoing reasons, defendants’ motions to dismiss axe ALLOWED.

 The statute provides
Whoever, not being a tenant thereof, sets or increases a fire upon land of another whereby the property of another is injured, or whoever negligently or willfully suffers any fire upon his own land to extend beyond the limits thereof whereby the woods or property of another are injured, shall be punished by a fine of not more than one thousand *473 dollars or by imprisonment for not more than two years, and the town where such fire occurred may recover in an action of tort, brought within two years after the cause of action accrues, against any such person the expense of extinguishing such fire.

 Curiously, if the defendants had a duty to report this fire, they would conceivably run the risk of implicating themselves in several additional crimes, including at least breaking and entering for both; possession of marijuana for Levesque; a violation of G.L.c. 266, §2 if their conduct in starting the fire was subsequently determined to be willful or malicious; and/or a violation of G.L.c. 266, §8 if their conduct was merely negligent.

 The Wisconsin case relied on by the Commonwealth is inapposite, as it addresses the question of ordinary negligence, not wanton or reckless conduct. See Rockweit v. Senecal et al., 187 Wisc.2d 170 (1994).