GORDON BAINES *vs.* ROBERT F. COLLINS.

Hampden.    September 18, 1941. — January 5, 1942.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Negligence,* Licensee.    *Wilful, Wanton or Reckless Misconduct.    Motor Vehicle,* Operation.

A boy riding a bicycle and holding onto the side of a motor vehicle to the knowledge of the operator but without invitation from him was at most a licensee to whom the operator would not be liable for injury caused by the operator's negligence or gross negligence in driving.

A finding that the operator of a motor truck was guilty of wilful, wanton or reckless misconduct toward a boy riding a bicycle was warranted by evidence that while the boy, to the operator's knowledge, was holding onto the right side of the truck, which was travelling at thirty-five miles an hour on an asphalt road, the operator suddenly veered the truck to a "traprock shoulder" at the extreme right side of the road and immediately "snapped it back again onto the road" although there was no traffic or other condition necessitating such action, and that thereby the boy was thrown from his bicycle and injured.

TORT.    Writ in the District Court of Springfield dated August 25, 1937.

Upon removal to the Superior Court, the action was tried before *Leary,* J.

*V. J. Zeo,* (*J. H. Mulcare* with him,) for the plaintiff.

*C. D. Sloan,* for the defendant.

DOLAN, J.    This is an action of tort brought by Gordon Baines, a minor, by his mother and next friend to recover compensation for personal injuries sustained by him as a result of being thrown from a bicycle while holding on to the side of the defendant's motor truck.    The declaration contained three counts, the first alleging negligence, the second gross negligence, and the third "wilful and wanton negligence" on the part of the defendant.    At the close of the evidence the defendant's motion for a directed verdict on each count was allowed subject to the plaintiff's exceptions.

Other than to state that the judge erred in directing verdicts for the defendant "on all the counts," the plaintiff has confined his argument before us to the issue raised by the third count. With relation to the first and second counts it is sufficient to say that the action of the judge in directing verdicts for the defendant on these counts was right, since a finding would be required that at the time of the accident the plaintiff was at best but a licensee upon the defendant's truck and therefore, as matter of law, the only duty owed the plaintiff by the defendant was to refrain from wilful, wanton and reckless conduct tending to injure the plaintiff. *West* v. *Poor*, 196 Mass. 183, 185. *Romana* v. *Boston Elevated Railway*, 218 Mass. 76, 82. *Murphy* v. *Boston & Maine Railroad*, 248 Mass. 78, 81, 82. *Theriault* v. *Pierce*, 307 Mass. 532, 534, and cases cited. The question remains whether there was error in the direction of a verdict for the defendant on the third count.

The jury would have been warranted in finding the following facts: At about 2 P.M. on August 1, 1935, the plaintiff, a fourteen year old boy, and two other boys were riding bicycles on Wilbraham Road in Springfield. They first saw the defendant's truck at the corner of Norfolk Street and Wilbraham Road near the C. Frank Adams playground. A removable round wooden tank with a capacity of one thousand gallons of water was mounted on the truck. The tank was then being filled. When it was filled the truck started off in an easterly direction on Wilbraham Road, which is a public highway surfaced with asphalt. The road runs easterly from the playground to the top of a steep hill, where it dips down to a fairly level grade and runs along for about three hundred yards to a pond. A causeway over the pond is about eighteen or twenty feet wide. At each end of the causeway the road is about thirty-five feet wide. Along both sides of the causeway "there are heavy wooden fences."

After the truck had proceeded for about one hundred yards the three boys pursued it and took hold of the truck "by an iron thing or chain." One boy was hanging on at the left rear of the truck, another at the right rear. The

plaintiff was holding on to the "iron thing" on the right side of the truck about six feet in front of the second boy. The plaintiff was holding on to the truck with his left hand, and was guiding his bicycle with his right hand. The defendant and "passengers in the cab were very friendly, gay and jovial, talking and laughing at the boys, looking around in their direction several times." The defendant did not tell the plaintiff or his companions "to get off the truck" at any time. The boys "travelled down the hill with the truck" and onto the causeway, the truck "constantly picking up speed . . . to 'maybe thirty or thirty-five miles an hour.'"

When the truck was in the middle of the causeway two of the boys ceased to hold on to the truck. The plaintiff held on, because he was afraid of being thrown against the fence on the side of the causeway. He did not dare to let go because of the speed of his bicycle which "was bobbing all around." As the truck neared the eastern end of the causeway the defendant looked out of the rear window of the cab at the plaintiff and, just after leaving the causeway, veered the truck suddenly and abruptly to the extreme right "over to the traprock shoulder" of the road and then "snapped it back again onto the road, at a point about fifty feet east of the easterly end of the causeway." The plaintiff was thrown forcibly over the handle bars of his bicycle "some twelve or fifteen feet forward over the road shoulder," and was injured. One of the other boys "yelled and motioned violently at the defendant who was looking back and the passengers were laughing at him." This boy "kept shouting at the defendant to come back and motioned with his hand to come back but there was no response from the defendant." He did not "slow up" or stop his vehicle, which "continued on its course." There was evidence that, when the defendant veered his truck to the right sharply and abruptly and "snapped it back" onto the road, there was no traffic "coming in the other direction" to render the action of the defendant in this respect necessary. The jury were not required to believe his conflicting testimony to the effect that "there were cars coming towards

his truck most all the time when he was coming across the culvert" and that he bore off a little to the right to be on the right side of the road, and if they disbelieved this explanation of his conduct, they could infer that there were no other conditions in the highway to justify his action in veering his truck over "to the traprock shoulder" of the road and "snapping it back" onto the road, in the circumstances before set forth as those the jury could find to have existed when the accident happened.

It is settled that one "who wilfully and wantonly, in reckless disregard of the rights of others, by a positive act or careless omission exposes another to death or grave bodily injury, is liable for the consequences, even if the other was guilty of negligence or other fault in connection with the causes which led to the injury." *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269, 271, 272, 273, and cases cited. *Potter* v. *Gilmore*, 282 Mass. 49, 54–56, and cases cited. It is not necessary to prove that the defendant deliberately intended to injure the plaintiff. It is enough if it is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequence of his act was injury to the plaintiff. There is a "constructive intention as to the consequences, which, entering into the wilful, intentional act, the law imputes to the offender, and in this way a charge which otherwise would be mere negligence, becomes, by reason of a reckless disregard of probable consequences, a wilful wrong." *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269, 271. *Banks* v. *Braman*, 188 Mass. 367, 370. *Romana* v. *Boston Elevated Railway*, 218 Mass. 76, 83. *Freeman* v. *United Fruit Co.* 223 Mass. 300, 302. *Bellenger* v. *Monahan*, 282 Mass. 523, 528. *LeSaint* v. *Weston*, 301 Mass. 136, 138. Am. Law Inst. Restatement: Torts, § 500.

In the present case the jury would have been warranted in finding that the defendant knew that the plaintiff was holding on to the right side of the truck, shortly after he took hold of it; that he was still holding on while the truck, a heavy one, travelling at a speed of thirty-five miles an hour, was crossing the causeway; that the defendant

looked at the plaintiff just as the truck was about to leave the causeway; that he knew or ought to have known that the plaintiff was in a position where it would be dangerous for him to release his hold on the truck; that, notwithstanding, the defendant wilfully and intentionally veered his truck over to the "traprock shoulder" ("like a gutter made of traprock covered with tar") on the right hand side of the road; that within a space of two car lengths he "snapped" his truck back onto the road; and that he intentionally created an unreasonable risk of harm to the plaintiff in the face of a strong likelihood, known to the defendant or which he had reason to know, that injury would result to the plaintiff, and that it did result in the manner before recited.

In these circumstances we are of opinion that the question, whether the plaintiff's injuries were caused by wilful, wanton and reckless conduct of the defendant, should have been submitted to the jury.

The plaintiff's exceptions to the direction of verdicts for the defendant on the first and second counts of the declaration are overruled. His exception to the direction of a verdict for the defendant on the third count is sustained, and the case is to be tried anew on that count only.

*So ordered.*