JAMES E. SANDLER *vs.* COMMONWEALTH.

Middlesex. October 5, 1994. - January 19, 1995.

Present: WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Wilful, Wanton or Reckless Conduct. Negligence*, Municipality. *Municipal Corporations*, Liability for tort.

Discussion of the nature of wanton or reckless conduct in the context of a tort action. [335-337]

Evidence of the persistent failure of a municipal entity to remedy defects in a tunnel on a traveled bikeway did not warrant a finding of wanton or reckless conduct as would justify tort liability under G. L. c. 21, § 17C, for injuries received by a person riding a bicycle who hit an uncovered eight-inch drain in the unlit tunnel. [337-340]

CIVIL ACTION commenced in the Superior Court Department on July 27, 1989.

The case was tried before *Katherine Liacos Izzo*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Catherine C. Ziehl*, Assistant Attorney General, for the Commonwealth.

*Lawrence R. Opert* for the plaintiff.

WILKINS, J. In *Molinaro* v. *Northbridge, ante* 278 (1995), we reiterated our view that a governmental unit could be liable under G. L. c. 21, § 17C (1992 ed.), for its wanton or reckless conduct that caused harm to a member of the public who used government land that was available for recreational purposes without charge. In this case we deal with the question whether the evidence, viewed most favorably to the plaintiff, justified the submission of the plaintiff's case to the jury. The Commonwealth appeals from a judgment for the plaintiff, arguing that the evidence was insufficient to warrant submission of the case to the jury and that, therefore, its

motion for a directed verdict and its motion for judgment notwithstanding the verdict should have been allowed. We transferred the appeal here. We reverse the judgment.

The plaintiff was injured, not long after 5 P.M. on October 29, 1987, when he fell off his bicycle while attempting to pass through a tunnel under the Eliot Bridge in Cambridge. The tunnel is part of the Dr. Paul Dudley White Bikeway, along the Charles River, which is controlled by the Commonwealth through the Metropolitan District Commission.[1] The jury were warranted in concluding that the plaintiff's fall was caused by an uncovered, eight-inch wide, twelve-inch long drain in the unlit tunnel. The drain, which was about eight inches deep, had had a cover, and the tunnel was designed to be lit, but vandals had removed the drain cover and had made the lights inoperable. Before we discuss the evidence in detail, it is important that we define wanton or reckless conduct.

The judge used the words "wilful, wanton, or reckless" in instructing the jury but defined them by the standard this court has used for wanton or reckless conduct. This was appropriate because wilfulness in the sense of an intention to cause harm was not presented by the facts. "Indifferent or reckless wrongdoing is not deliberate or intentional wrongdoing." *Andover Newton Theological Sch., Inc.* v. *Continental Casualty Co.*, 409 Mass. 350, 352 (1991). See *Sheehan* v. *Goriansky*, 321 Mass. 200, 204 (1947), quoting Restatement of Torts § 500 comment f (1934). Wanton conduct may suggest arrogance, insolence, or heartlessness that reckless conduct lacks (see *Commonwealth* v. *Welansky*, 316 Mass. 383, 398 [1944]), but the difference is likely not to be significant in most cases. Our recent practice has been simply to refer to reckless conduct as constituting the conduct that produces liability for what the court has traditionally called wilful, wanton, or reckless conduct. See *Manning* v. *Nobile*, 411 Mass. 382, 387 n.8 (1991).

---

[1]For convenience, we shall refer to the defendant as the MDC.

Our long-standing custom has been to measure reckless conduct by the same test whether reckless conduct is alleged as the basis for liability in tort or as the basis for guilt of involuntary manslaughter. See *Commonwealth v. Welansky, supra* at 397; *Banks v. Braman,* 188 Mass. 367, 369 (1905). Reckless conduct may consist of a failure to act, if there is a duty to act, as well as affirmative conduct. *Commonwealth v. Welansky, supra.* We are concerned here with an alleged breach of a duty to remedy or guard against a known or reasonably knowable dangerous condition.[2]

Reckless failure to act involves an intentional or unreasonable disregard of a risk that presents a high degree of probability that substantial harm will result to another. See *Manning v. Nobile, supra* at 387-388, and cases cited. The risk of death or grave bodily injury must be known or reasonably apparent, and the harm must be a probable consequence of the defendant's election to run that risk or of his failure reasonably to recognize it. See *Commonwealth v. Catalina,* 407 Mass. 779, 789 (1990); *Scaia's Case,* 320 Mass. 432,

---

[2]It is not essential that reckless conduct be defined in the same terms for both tort and criminal law purposes, as we have done in this Commonwealth. Under the Model Penal Code, for example, manslaughter includes a criminal homicide committed recklessly (Model Penal Code § 210.3 [1] [a] [1980]), which is defined subjectively as a conscious disregard of a substantial and unjustifiable risk that conduct will cause the death of another (*id.* at § 2.02 [2] [c]). Liability in tort for reckless disregard of safety is defined, on the other hand, in Restatement (Second) of Torts § 500 (1965), as including either an objective or a subjective element of knowledge of the risk:

> "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

Our cases have followed this latter definition of recklessness. As long as criminal liability for manslaughter and tort liability are based on the same level of proof of recklessness, any inclination to lower the tort standard must be tested by deciding whether, if the plaintiff had died, the circumstances would warrant a conviction of involuntary manslaughter.

433-434 (1946); *Commonwealth* v. *Welansky, supra* at 398-399; *Baines* v. *Collins*, 310 Mass. 523, 526 (1942).

According to our cases, the degree of risk that will warrant a finding of reckless conduct can involve an imputation of intentional conduct to a person who in fact did not realize the gravity of the danger. *Commonwealth* v. *Welansky, supra* at 398-399; *Baines* v. *Collins, supra* at 526 (imputing a constructive intention as to the consequences of a reckless disregard of probable consequences). We have also said that reckless conduct involves a degree of risk and a voluntary taking of that risk so marked that, compared to negligence, there is not just a difference in degree but also a difference in kind. *Commonwealth* v. *Welansky, supra* at 399. This court's recognition of a fictional or constructive intention and this court's representation that wanton or reckless conduct is different in kind from negligence do not much help in differentiating neatly between negligent conduct (including grossly negligent conduct) and reckless conduct. These concepts emphasize, however, the requirement that reckless conduct must be based on a high degree of risk that death or serious bodily injury will result from a defendant's action or inaction when under a duty to act.

There is no doubt that the MDC through its employees was aware that a risk of harm was created by a chronically unlit tunnel with missing drain covers. An MDC employee testified that he did not know when the lights last worked. Another witness testified that he had not seen them illuminated in at least thirteen years. There was evidence that the lights were frequently broken, that they once had had protective devices which were now broken, and that they were broken and not working on the day of the accident. The MDC used only unattached drain covers, held in place only by gravity. The covers loosened over the years, did not fit the drains, and were frequently stolen by vandals. The MDC knew that at least one drain in the tunnel was often without a cover from January 1 to October 30, 1987. The cover of the particular drain that caused the plaintiff's injury was frequently stolen and was not in place following the accident.

The MDC knew that the lack of a drain cover posed a danger to individuals. The MDC also knew that the regularly used tunnel was often flooded with water because of inadequate drainage.

There was evidence that the MDC, knowing of the danger posed by absent drain covers in the dark tunnel, did not respond reasonably. It had no policy for bikeway inspection, had no record of the existence or replacement of drain covers from January 1 to October 30, 1987, and did not have drain cover replacements on hand, although they were frequently stolen and there was room to store replacement covers in the tunnel closet. There was expert testimony that the design of the lighting and drainage in the tunnel was deficient and that feasible alternatives were available at reasonable costs, including vandal-resistant lighting and drains capable of being fastened.[3]

Nevertheless, the degree of the risk of injury in this case does not meet the standard that we have established for recklessness. While it is true that each case depends on its facts and that some cases are close to the line, this case, which involves a persistent failure to remedy defects in a tunnel on a traveled bikeway, simply does not present a level of dangerousness that warrants liability under G. L. c. 21, § 17C, for

---

[3]The MDC complains of the admission of opinion evidence as to the inadequate design of the lights and drain covers. Its argument is that those designs were within the discretion of the MDC and could not be the basis of liability. See G. L. c. 258, § 10 (*b*) (1992 ed.); *Patrazza* v. *Commonwealth*, 398 Mass. 464, 469-470 (1986) (guardrail design within discretionary function protection). The MDC's argument fails on several grounds. The MDC did not object at trial to the admission of the now challenged opinion evidence. The MDC's unsuccessful pretrial motion in limine to exclude evidence of its decision not to repair the lights or to fasten the drain covers, as falling within a discretionary function, did not preserve the issue for appellate consideration. See *Commonwealth* v. *Shea*, 401 Mass. 731, 740 (1988). Moreover, the plaintiff's case was not based on liability for defective or negligent design, and, therefore, discretionary function considerations had no bearing on the admissibility of the evidence. Finally, the evidence that the MDC could have easily and economically remedied the chronic problem was admissible on the question of the MDC's recklessness. Allowing a dangerous condition to continue that could easily be remedied tends to show the MDC's indifference to the risk.

the MDC's inaction. In the margin, we summarize several of our civil cases in which the degree of risk of injury was so great that a finding of recklessness justifying tort liability was warranted.[4] Similarly, our opinions in which wanton or reckless conduct has been accepted as a proper basis for a finding of guilt of involuntary manslaughter have involved a far greater degree of risk of serious injury (dangerousness) than that created by the failure to remedy the known,

---

[4]Many of our cases involving reckless conduct justifying tort liability have involved the use of motor vehicles and the like. See, e.g., *Sheehan* v. *Goriansky*, 317 Mass. 10, 15 (1944) (finding warranted that driver's conduct was reckless where driver knew that trespasser was on running board, increased speed, ran into pole, killing him), *S.C.*, 321 Mass. 200 (1947); *Baines* v. *Collins*, 310 Mass. 523, 526-527 (1942) (question for jury whether truck driver was reckless where he knew boy on bicycle was holding onto heavy truck, continued to drive thirty-five miles an hour on asphalt highway, and suddenly and unnecessarily veered onto shoulder of road, throwing boy from bicycle and injuring him); *Isaacson* v. *Boston, Worcester & N.Y. St. Ry.*, 278 Mass. 378, 390 (1932) (finding that bus driver was reckless warranted where brakes were not functioning and driver was speeding in a forbidden lane, in violation of three separate laws); *Leonard* v. *Conquest*, 274 Mass. 347, 352 (1931) (evidence warranted finding of recklessness where driver drove thirty miles an hour in lane designated for oncoming traffic on crowded narrow road, forcing oncoming car off road and into pole and thereby injuring other driver, and noting that "[t]he jury could find that the driver rode with death and that no reasonable person would expect to be saved from great bodily harm"); *Yancey* v. *Boston Elevated Ry.*, 205 Mass. 162, 171 (1910) (jury could have concluded that conductor acted recklessly when he deliberately and without warning started streetcar despite knowledge that disabled person stood on step and held onto car, so that plaintiff was dragged and fell onto street); *Aiken* v. *Holyoke St. Ry.*, 184 Mass. 269, 270 (1903) (proper question for jury whether motorman was reckless in quickly starting streetcar when he knew young boy, clinging to step of car and yelling for help, was in great peril, thereby throwing him under wheels of car).

Other cases, not involving vehicles but warranting a finding of recklessness include *Freeman* v. *United Fruit Co.*, 223 Mass. 300, 302 (1916) (deliberately throwing large, heavy roll of canvas stiffened with ice off deck from great height, thereby breaking plaintiff's leg); *Zink* v. *Foss*, 221 Mass. 73, 73-74 (1915) (setting dog on boy who had fallen into defendant's yard); *Romana* v. *Boston Elevated Ry.*, 218 Mass. 76, 78, 82-84 (1914) (girl shocked and burned when she tripped into electrically charged pole on path commonly used by children with defendant's permission, where defendant had been warned of condition of pole, and had done nothing).

chronic absence of an eight-inch by twelve-inch cover on an eight-inch deep drain on a dark traveled path.[5]

The level of fault in this case, measured by the degree of risk of serious injury, is more consistent with our cases in which we have held that the evidence did not warrant a finding of wanton or reckless conduct. See, e.g., *Manning* v. *Nobile, supra* at 388-389 (claim of recklessness based on hotel's failure to provide bartender for private party rejected); *Hawco* v. *Massachusetts Bay Transp. Auth.*, 398 Mass. 1006, 1007 (1986) (defendant not reckless in leaving bus passenger at station where it appeared to bus driver that burglary was in progress); *Mounsey* v. *Ellard*, 363 Mass. 693, 694 (1973) (failure to repair drain resulting in accumulation of ice on defendant's premises, not wilful, wanton, or reckless conduct); *Sawler* v. *Boston & Albany R.R.*, 339 Mass. 34, 36 (1959) (long-standing failure to fulfil statutory duty to maintain fence along right of way, thus permitting child to cross railroad tracks, not wilful, wanton, or reckless misconduct); *Siver* v. *Atlantic Union College*, 338 Mass. 212, 216-217 (1958) (where young child fell into pit and died because some third party removed pit's cover, landowner not liable for wilful, wanton, or reckless conduct); *Carroll* v. *Hemenway*, 315 Mass. 45, 46-47 (1943) (where police officer investigating building fell into unguarded and unlit elevator well, lack of repair not wilful, wanton, or reckless conduct).

*Judgment reversed.*

---

[5]See, e.g., *Commonwealth* v. *Catalina*, 407 Mass. 779 (1990) (selling of deadly drug, heroin, to known addict); *Commonwealth* v. *Gallison*, 383 Mass. 659, 666-667 (1981) (failure to seek any medical help for very sick child); *Commonwealth* v. *Atencio*, 345 Mass. 627, 629 (1963) (cooperation in bringing about suicide by participation in Russian roulette game); *Persampieri* v. *Commonwealth*, 343 Mass. 19, 22-23 (1961) (taunting of depressed wife to commit suicide, informing her of gun location, loading gun and directing her in its use); *Commonwealth* v. *Welansky*, 316 Mass. 383, 401 (1944) (failure, among other things, to provide sufficient proper exits resulting in loss of many lives); *Commonwealth* v. *Pierce*, 138 Mass. 165, 180 (1884) (application of kerosene to patient as remedy for illness).