Tierney, J.
Plaintiff Ryan M. Robitaille (Ryan), by his mother and next friend Kimberly A. Robitaille (Robitaille), seeks damages from the City of Attleboro (the City) for injuries he suffered while at the Capron Park Zoo, owned and operated by the City. Ryan’s complaint alleges claims for negligence (Count I) and “wilful, wanton and reckless” conduct by the City (Count II). The City now moves for summary judgment, contending that Ryan’s right of recovery is controlled by G.L.c. 21, §17C, the so-called Recreational Use Statute, and the Supreme Judicial Court’s decision in Sandler v. Commonwealth For the following reasons, the City’s motion is ALLOWED.
BACKGROUND
The material facts are not in genuine dispute. On Wednesday, March 16, 1994, Robitaille took her 3VÍ2 year old son Ryan to Capron Park in Attleboro. The park is owned and operated by the City, and consists of open fields, a playground and picnic area, and the Capron Park Zoo. Most of the park is open to the public for recreational use without charge, but the City does *131 charge an admission fee to enter the Zoo, for persons age five and older, except on Wednesdays when no fee is charged for any member of the public.
Within the Zoo is a Tropical Rain Forest Exhibit. The Exhibit is a very dark room, apparently to simulate a deep rain forest environment. It has a single entrance door, and has a path along a rail that separates the display from the viewing area and leads to an unlighted exit door that had no handle, knob or push plate, or other marking to indicate how or on which side it opened. The exit door is made of heavy metal, and is the first door of a double doorway system mandated by the U.S. Department of Agriculture to prevent the wildlife on display from escaping. City employees regularly inspect and maintain the Exhibit. The door and doorway system had been in place for thirty-three years before Ryan’s accident, without any reported accident or injury to any member of the public. Some 200,000 people, including numerous children, use the Exhibit’s exit door each year.
Ryan was injured, however, as he attempted to exit from the Exhibit in the darkness. He caught the middle finger of his dominant left hand in the area where the door is hinged to the door frame, and the distal phalanx of that finger was severed. Robitaille ran to the gift shop, carrying Ryan, and an ambulance was called. The amputated portion of Ryan’s finger was surgically reattached, but he continues to have difficulty with some fine motor skills and suffers some pain and sensitivity in his finger.
DISCUSSION
This court will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). A moving party who does not bear the burden of proof at trial must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles them to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). This maybe done either by submitting affirmative evidence negating an essential element of the opposing party’s case or by showing that the opposing party is unlikely to submit proof of that element at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, supra at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. The Recreational Use Statute, G.L.c. 21 §17C.
The City maintains that it is entitled to judgment as a matter of law on the negligence claim against it because the claim is barred by G.L.c. 21, §17C, the so-called Recreational Use Statute. The statute applies, according to the City, because it never charges an admission fee to persons under the age of five, and because it never charges an admission fee at all on Wednesdays.
Robitaille does not dispute that the Zoo is open for recreational purposes, free of charge to children under the age of five and free of charge to everyone on Wednesdays. Instead, Robitaille disputes the City’s interpretation of the statute.
The statute provides, in relevant part, that
[a]n owner of land who permits the public to use such land for recreational purposes without imposing a charge or fee therefor . . . shall not be liable to any member of the public who uses said land for the aforesaid purposes for injuries to person or property sustained by him while on said land in the absence of wilful, wanton or reckless conduct by such owner . . . The liability of an owner who imposes a charge or fee for the use of his land by the public for recreational purposes shall not be limited by any provision of this section.
G.L.c. 21, §17C. The benefit of this protection from negligence claims has been extended to municipalities, Anderson v. Springfield, 406 Mass. 632, 634 (1990); Molinaro v. Northbridge, 419 Mass. 278, 279 (1995).
The City’s argument that the negligence claim is barred because it never charges an admission fee to children under the age of five is easily rejected. Permitting certain children to use the Zoo without imposing a charge does not amount to permitting the public to use the Zoo without charge, as is required by the plain language of the statute.
The second prong of the City’s argument requires closer inspection: because the City permits the public to use the zoo without imposing a charge on Wednesdays, then it is entitled to the benefit of the statute for injuries sustained on Wednesdays. The cases that have concluded that the Recreational Use Statute does apply have all involved land that was apparently held open to the public at all times without charge. See Anderson, supra (public park and softball field); Molinaro, supra (public playground): Sandler v. Commonwealth, 419 Mass. 334 (1995) (bikeway tunnel under a bridge); Catanzarite v. Springfield 32 Mass.App.Ct. 967 (1992); Forbush v. Lynn, 35 Mass.App.Ct. 696 (1994) (public playground). Nevertheless, there is no requirement in the statute that the landowner must at all times permit the public to use the land for recreational purposes without charge.
*132 The Court of Appeals has noted one paradox created by the statute, “that the applicability of §17C creates an anomalous distinction between child users of public land — a municipality, enjoys a substantially lesser degree of responsibility (refraining from reckless conduct) for the protection of children lawfully playing on public recreational land which they have been affirmatively encouraged to use than it does for the protection of trespassing children who illegally invade ’’nonrecreational" property [where a duty of reasonable care is imposed] owned by the municipality, the essential characteristics of which land may be substantially similar if not identical.” Forbush, supra, 35 Mass.App.Ct. at 702. If the purpose of the Recreational Use Statute is to encourage free access to the public for recreational purposes, see DiMello v. Gray Lines of Boston, Inc., 836 F.2d 718, 720 (1st Cir. 1988), then the further paradox of imposing liability for negligence on days when a fee is charged, but shielding the City from negligence claims on days when the public is permitted to use the Zoo for recreational purposes without charge, is not unreasonable.
The court concludes that G.L.c. 21, §17C applies, and Ryan’s claim for negligence is barred.
II. Claim for wilful, wanton or reckless conduct.
The City next argues, while conceding that it is still liable for wilful, wanton or reckless conduct under the Recreational Use Statute, that it is entitled to summary judgment under the Supreme Judicial Court’s decision in Sandler v. Commonwealth, 419 Mass. 334 (1995)
The Court noted in Sandler that it has been its recent practice “simply to refer to reckless conduct as constituting the conduct that produces liability for what the court has traditionally called wilful, wanton, or reckless conduct,” id. at 335, and that recklessness may be a failure to act, if there is a duty to act, as well as affirmative conduct. Id. at 336. Recklessness involves an intentional or unreasonable disregard of a risk that presents a high degree of probability that substantial harm will result to another, and the risk of death or grave bodily injury must be known or reasonably apparent, and the harm must be a probable consequence of the defendant’s election to run that risk or of his failure reasonably to recognize it. Id. at 336. The Court emphasized “the requirement that reckless conduct must be based on a high degree of risk that death or serious bodily injury will result. ..” Id. at 337.
In Sandler, the plaintiff was injured when he fell off his bicycle while attempting to pass through a tunnel controlled by the Metropolitan District Commission (MDC), and ran into an uncovered, eight-inch wide, twelve-inch long drain in the unlit tunnel. The Court noted that there was “no doubt that the MDC through its employees was aware that a risk of harm was created by a chronically unlit tunnel with missing drain covers [due to theft and vandalism],” that the “MDC knew that at least one drain in the tunnel was often without a cover,” that it “knew that the lack of a drain cover posed a danger to individuals,” and that “the regularly used tunnel was often flooded with water because of inadequate drainage.” Id. at 337-38. Further, “[tjhere was evidence that the MDC, knowing of the danger posed by absent drain covers in the dark tunnel, did not respond reasonably. It had no policy for bikeway inspection, had no record of the existence or replacement of drain covers . . . and did not have drain cover replacements on hand, although they were frequently stolen and there was room to store replacement covers in the tunnel closet. There was expert testimony that the design of the lighting and drainage in the tunnel was deficient and that feasible alternatives were available at reasonable costs, including vandal-resistant lighting and drains capable of being fastened.” Id. at 338. The Court nevertheless concluded that the degree risk of injury in this case, “which involves a persistent failure to remedy defects in a tunnel on a traveled bikeway, simply does not present a level of dangerousness that warrants liability under G.L.c. 21, §17C, for the MDC’s inaction.” Id.
While summary judgment is seldom granted in actions involving allegedly reckless conduct, that rule is not absolute. Manning v. Nobile, 411 Mass. 382, 388 (1991). Here, the City does not bear the burden of proof at trial, and may be entitled to summary judgment by establishing that Ryan is unable to prove an essential element of his claim and proof of that element is unlikely to be forthcoming at trial.
Ryan alleges that the City’s wilful, wanton and reckless conduct is its failure “to provide a well lit egress from the exhibit, a door with handles that Eire functional for opening and closing the door without difficulty even for children and for failure to warn that the subject door was extremely heavy and difficult to operate.” Ryan further alleges that the Exhibit room is very dark and has a path that leads to a single unmarked exit door. This does not, as a matter of law, establish conduct involving an intentional or unreasonable disregard of a risk that presents a high degree of probability that substantial harm will result to another, with the risk of death or grave bodily injury known or reasonably apparent. Ryan has failed to meet his burden to show the existence of facts that are material under the Sandler standard, and the City is entitled to judgment as a matter of law.
ORDER
For the foregoing reasons, it is hereby ORDERED that the city of Attleboro’s motion for summary judgment is ALLOWED.