PABLO CANDIA MONTES *vs.* MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY.

Suffolk. January 6, 2006. - March 9, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Massachusetts Bay Transportation Authority. Wilful, Wanton, or Reckless
Conduct. Negligence,* Railroad.

In a civil action alleging reckless conduct in connection with an accident in
which one of the defendant transportation authority's trains severed the leg
of the plaintiff, the judge erred in denying the defendant's motion for judg-
ment notwithstanding the verdict, where the plaintiff failed to establish that
the risk of death or grave bodily injury to him was known or reasonably
apparent to the defendant's motorperson, and that the motorperson chose
to run the risk rather than alter his conduct or that he failed reasonably to
recognize the risk. [184-187]

CIVIL ACTION commenced in the Superior Court Department on
September 20, 1999.

The case was tried before *Maria I. Lopez,* J., and a motion
for judgment notwithstanding the verdict was heard by her.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Joseph G. Abromovitz* for the plaintiff.

*Jeremiah P. Sullivan, Jr. (Ann Marie Johnnene* with him) for
the defendant.

SPINA, J. A jury returned a special verdict against the
defendant, Massachusetts Bay Transportation Authority
(MBTA), for reckless conduct stemming from an accident in
which one of the defendant's trains severed the lower left leg of
the plaintiff, Pablo Candia Montes. The jury could have found
that, at the time of the accident, the train was traveling at an
excessive rate of speed and that the defendant's motorperson
was not paying attention while operating the train. The jury did
find, in response to a special question, that the plaintiff was a

trespasser at the time of the accident and that the defendant did not know or have reason to know that the plaintiff was helplessly trapped on its property.

In an unpublished opinion under its rule 1:28, the Appeals Court set aside the verdict and ordered judgment for the defendant after concluding that the defendant's motion for judgment notwithstanding the verdict should have been allowed. We granted the plaintiff's application for further appellate review, and now conclude that, as a matter of law, the evidence does not support a finding of reckless conduct and the defendant is entitled to judgment notwithstanding the verdict. Because of our holding, we do not address other issues raised in the defendant's appeal, namely, (1) whether the evidence was sufficient to warrant a finding that the defendant's conduct caused the plaintiff's injuries, (2) whether the award of damages was supported by the evidence, and (3) whether the judge erred by excluding evidence under the psychotherapist-patient privilege (G. L. c. 233, § 20B) and the social worker-client privilege (G. L. c. 112, § 135A) as to how the accident occurred.

1. The standard of review for the denial of a motion for judgment notwithstanding the verdict is "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [nonmoving party].' " *Boothby* v. *Texon, Inc.*, 414 Mass. 468, 470 (1993), quoting *Dobos* v. *Driscoll*, 404 Mass. 634, 656, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989). With this standard in mind, we recite the evidence of reckless conduct in the light most favorable to the plaintiff. See *Commonwealth* v. *Johnson Insulation*, 425 Mass. 650, 660 (1997).

On July 4, 1999, at approximately 1 A.M., the plaintiff was lying on his back between the inbound and outbound railroad tracks at the point where they pass under the Beach Street bridge in Revere. His lower left leg lay across the inside rail of the outbound tracks just north of a switch that was located approximately 107 feet north of the end of the passenger platform to the outbound line at Revere Beach Station. Six-foot chain-link fences with barbed wire along both sides of the tracks from Revere Station to Wonderland Station, and chain link fences

about ten feet high along both sides of Beach Street, had been erected to keep unauthorized people away from the tracks in the area. The plaintiff's status as a trespasser and how he came to be on the tracks were disputed issues at trial, but they are not issues on appeal.

An outbound train arrived at Revere Beach Station shortly before 1 A.M. The four-car train was completing its last run of the night. The last stop, Wonderland Station, was approximately one-quarter mile beyond Revere Beach Station. Shortly after 1 A.M., the train left Revere Beach Station and accelerated to twenty-five miles per hour. The posted speed was ten miles per hour. The high beam headlights on the train were about five times brighter than the headlights of an automobile, and illuminated the area under the bridge. The green light on the switch, as well as the switch structure itself, could obstruct a motorperson's view of someone lying just behind the switch. The motorperson, who was sitting in the right front corner of the lead car of the train (above the outside rail) and facing forward, thought he saw something or someone in his peripheral vision to the left between the inbound and outbound tracks as he passed the switch under the Beach Street bridge. He brought the train to a stop at a point where most of the third car had passed the switch.[1] He told a train inspector who was on the third car that he might have seen someone between the inbound and outbound tracks. The inspector looked out the windows of the train with the aid of a flashlight but saw nothing. He instructed the motorperson to proceed. The train advanced to Wonderland Station.

At approximately 6 A.M. the next morning, the plaintiff was found hobbling alongside the tracks. The point of contact with the train was determined to be just after the switch under the Beach Street bridge, on the Wonderland Station side (north) of the switch. The motorperson testified that he never saw the plaintiff, either at the time of the accident or a few minutes later when he was returning on the inbound tracks to park the train

---

[1]The train was approximately 200 feet long. Each car was approximately forty-nine and one-half feet long. The jury could have found that the front of the train stopped about 150 feet beyond the switch.

overnight at the car house behind Orient Heights Station.[2]

Later that morning, the motorperson was informed about the accident. Fearing that he would lose his job, he telephoned the inspector who was on the train and asked him not to say anything about stopping the train.[3] The inspector refused, and they both gave statements as to how the incident occurred, including stopping the train because someone or something may have been on the tracks.

In addition to offering evidence of the ten mile per hour posted speed limit, the plaintiff offered evidence of various MBTA safety regulations that may have been violated, including:

> "The Motorperson must personally operate his/her own train and *facing forward, keep a sharp lookout ahead for* signals, obstructions and *persons on or near the right-of-way* . . ." (emphasis added).

> "Motorpersons . . . must appreciate the great responsibility for the safety of passengers and property which they assume, and in all cases where there is any question as to what should be done, *take the safer course. NEVER TAKE CHANCES*" (emphasis added).

2. The defendant argues that the evidence is insufficient to warrant a finding that its motorperson operated the train with reckless disregard of the plaintiff's safety, that is, that he acted with knowing or intentional disregard of an unreasonable risk that involved a high degree of probability that death or serious bodily harm would result. See *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944). The plaintiff argues that the evidence supports a finding either that the defendant's motorperson actually saw the plaintiff in time to stop the train but nevertheless

---

[2]Subsequently, the next outbound train, "the last run," passed the accident site both on the way to Wonderland Station and on the way to the car house behind Orient Heights Station. The motorperson operating that train never saw the plaintiff.

[3]The defendant's rules and regulations require a train's inspector to "call in" at the time a train makes an unscheduled stop and report the reason for the stop. Here, the inspector was required to report that the motorperson thought he might have seen someone or something between the inbound and outbound tracks.

proceeded with knowing or intentional disregard of the high probability that the plaintiff would be killed or seriously injured, or that the motorperson "saw [the plaintiff] too late to stop because he was speeding and in flagrant violation of safety rules to face forward keeping a sharp lookout for persons on and/or near the tracks."

Whether it is alleged as the basis for liability in tort or as guilt of involuntary manslaughter, reckless conduct is measured by the same test. See *Sandler* v. *Commonwealth*, 419 Mass. 334, 336 & n.2 (1995), citing *Commonwealth* v. *Welansky, supra* at 397, and *Banks* v. *Braman*, 188 Mass. 367, 369 (1905). Reckless conduct involves a degree of risk and the voluntary taking of that risk that is so great that, compared with negligent conduct, the difference is not merely one of degree but of kind. See *Commonwealth* v. *Welansky, supra* at 399; Restatement (Second) of Torts § 500 comment g (1965). The risk, which involves "death or grave bodily injury[,] must be known or reasonably apparent, and the harm must be a probable consequence of the defendant's election to run that risk or of his failure reasonably to recognize it." *Sandler* v. *Commonwealth, supra* at 336. In the civil context this court has applied the definition of "reckless disregard of safety" in the Restatement (Second) of Torts, *supra* at § 500:

> "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

See *Sandler* v. *Commonwealth, supra* at 336 n.2.

Here, contrary to the plaintiff's assertion, there is no evidence that the defendant's motorperson saw the plaintiff in time to stop the train before striking him. The motorperson testified that he was facing forward and did not see anything on the tracks directly in front of him as he left Revere Beach Station for Wonderland Station. He first noticed someone or something, a

dark object between the inbound and outbound tracks, in his peripheral vision to his left as he was passing the switch under the Beach Street bridge. The inspector testified that, after the train stopped, the motorperson told him he might have seen someone between the inbound and outbound tracks. If the jury disbelieved the motorperson's testimony that he did not see the plaintiff, or that he did not see the object that caused him to stop the train until he passed the switch where the plaintiff had been lying, such disbelief is not evidence that the motorperson saw the plaintiff in time to stop the train. See *Cruzan* v. *New York Cent. & Hudson River R.R.*, 227 Mass. 594, 597 (1917), writ of error dismissed, 249 U.S. 621 (1919); *Feldman* v. *Feldman*, 20 Mass. App. Ct. 309, 312 (1985). There is no evidence that the motorperson knew that someone was in fact on or near the tracks in the area where the plaintiff was struck, or (because of the fencing) that he had any reason to believe to a high degree of probability that someone was on or near the tracks, in time to stop the train to avoid hitting him. See *Manning* v. *Nobile*, 411 Mass. 382, 389 (1991).

The motorperson's request that the inspector not report the stopping of the train because he might lose his job could support an inference that the motorperson thought he might lose his job for actually striking someone he should have seen. However, without more, this evidence is too speculative to support an inference that he actually saw the plaintiff in time to stop the train before hitting him.[4]

Similarly, there is no evidence that the motorperson was not facing forward. Mere disbelief of his testimony that he had been facing forward is no evidence of the contrary.

There is evidence that the train was traveling at twenty-five miles per hour in a ten mile per hour posted speed zone, and the jury could have inferred that the motorperson was inattentive.[5] However, that is the extent of the evidence adduced to support the claim of reckless operation. Excessive speed and inattention in these circumstances, without more, do not

---

[4]At trial, the plaintiff did not argue that the motorperson actually saw him.

[5]Based on the evidence of intense lighting of the train's headlights, the jury could have inferred that the motorperson should have seen the plaintiff but failed to do so because of inattention.

constitute recklessness. *Gage* v. *Westfield*, 26 Mass. App. Ct. 681, 691 (1988). They are more consonant with concepts of negligence and gross negligence. See, e.g., *Dinardi* v. *Herook*, 328 Mass. 572, 574 (1952) (discussion of relationship between duration of inattention and level of danger in surrounding circumstances in cases of negligence and gross negligence); *Sadak* v. *Tucker*, 310 Mass. 153, 154-156 (1941) (evidence of excessive speed [twenty-five miles per hour] and allowing windshield to become frosted with sleet that restricted driver's vision warranted verdict of negligence for striking child on sled); *Zavras* v. *Capeway Rovers Motorcycle Club, Inc.*, 44 Mass. App. Ct. 17, 22 (1997) (question of flagman's inattention during dirt bike race for unspecified period sufficient to go to jury on issue of gross negligence where time was sufficient for three racers to fall on top of fallen racer and for spectators to recognize danger and to yell at flagman to wave warning flag).[6]

The motorperson's conduct in this case does not meet the standard that we have established for recklessness. The plaintiff has not shown that the risk of death or grave bodily injury to him was known or reasonably apparent to the motorperson, and that the motorperson chose to run the risk rather than alter his conduct or that he failed reasonably to recognize the risk. See *Sandler* v. *Commonwealth, supra* at 336; *Commonwealth* v. *Welansky, supra* at 398-399. The defendant's motion for judgment notwithstanding the verdict should have been allowed.

The order denying the defendant's motion for judgment notwithstanding the verdict is reversed, and the case is remanded for entry of an order for judgment for the defendant notwithstanding the verdict.

*So ordered.*

---

[6]Because there is no evidence that the motorperson knew the plaintiff was on or about the tracks, the evidence would not support a verdict, based on negligence, that the defendant knew a trespasser was trapped in a position of peril on its property and violated its duty to exercise reasonable care in the circumstances. See *Pridgen* v. *Boston Hous. Auth.*, 364 Mass. 696, 707 (1974). In any event, the jury's answer to a special question disposed of this issue.