Agnes, Peter W., J.
1. Introduction
This is a civil action in which the minor plaintiff (“plaintiff’) fell and suffered a severe head injury on May 15, 2003 while playing on the property of the Grafton Middle School. The property where the incident occurred is owned and controlled by the defendant Town of Grafton. The defendant has filed a motion for summary judgment. It relies on the state’s Recreational Use Statute. See G.L.c. 21, §17C(a). The defendant town maintains that it is entitled to summary judgment because the Recreational Use statute limits its exposure to circumstances it which it engages in willful, wanton, or reckless conduct, and the evidence in this case is not sufficient to meet that standard.
*373 2. Background
The essential facts are not in dispute. The defendant town installed, caused to be installed or allowed the installation of the playground equipment at the Grafton Middle School. The apparatus in question is shown in photographs and is commonly referred to as “monkey bars.” It is designed for climbing and swinging. See Plaintiffs Memorandum in Opposition, attachment One. The monkey bars consist entirely of metal piping and are comprised of three curved, ladder-like bars attached in such a way that children can climb onto the structure from any one of three angles and hang from the top. The structure is supported by metal posts that are set in concrete footings. The concrete footings are exposed and raised slightly above the grade of the surrounding dirt. The plaintiffs injuries are the result of his head striking one of the concrete footings when he fell from the Monkey Bars.
3.
The undisputed facts indicate that at the time of the injury, the five-year-old plaintiff and his father were attending the plaintiffs older brother’s Little League baseball game at the Grafton Middle School. It was about 6:30 p.m. It was light outside. The plaintiff obtained permission from his father to play on the monkey bars with some friends. The plaintiff had played on these monkey bars in the past and was familiar with the equipment. The apparatus was on the school’s property and about fifty feet from the baseball diamond. It was open to the use of anyone present. At some point after the plaintiff and his father arrived at the school, plaintiffs father was called to the area of the monkey bars where he found his son lying unconscious on the ground underneath them and bleeding from the head. The child was diagnosed with a right parietal skull fracture. The plaintiff had climbed on the monkey bars in the past without incident,[1] and there is no evidence of other injuries suffered by children using these monkey bars. There is no evidence that anyone employed by the Grafton Middle School or by the Town of Grafton was aware of the condition of the monkey bars at the time of .the incident. Rather, the evidence suggests that no employee or official of the Town of Grafton was aware that the cement footings underneath the monkey bars were not covered.[2] The evidence also indicates that the monkey bars in question were not in use as recreational equipment for the students attending the Grafton Middle School. However, from the- evidence that is before the court, including, in particular, the photographs attached to the plaintiffs opposition, it is reasonable to infer that the monkey bars had been in the condition they were at the time of the plaintiffs fall for a long period of time.
4. Discussion
(A) Standard of review
“The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.” Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). See Mass.RCiv.P. 56(c). The Court is required to draw all evidentiary inferences in favor of the plaintiff. See Simplex Techs., Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 197 (1999). “Summary judgment is seldom granted in a cause of action alleging reckless conduct. However, this is not an absolute rule.” Boyd v. National Railroad Passenger Corp., 446 Mass. 540, 545 (2006) (citations omitted).
(B) Whether reckless conduct may be based on a failure to maintain playground equipment
The Massachusetts recreational use statute, G.L.c. 21, § 17(C) states, in part,
Any person . . . who lawfully permits the public to use such land for recreational... purposes without charging a fee therefore, or who leases such land for said purposes to the commonwealth or any political subdivision thereof or to any nonprofit corporation, trust or association, shall not be liable for the personal injuries or property damage sustained by such members of the public ... in the absence of willful, wanton, or reckless conduct.. .[3]
The statute protects cities and towns, as well as private landowners, from tort suits, see Anderson v. City of Springfield, 406 Mass. 632, 634 (1990), “in the absence of willful, wanton or reckless conduct by (the) owner.” Molinaro v. Northbridge, 419 Mass. 278, 279 (1995). Although the statutory phrase is “willful, wanton, or reckless conduct,” the language used by the courts to describe unintentional conduct that may give rise to liability in a case that falls under the Recreational Use statute is simply reckless conduct. See Sandler v. Commonwealth, 419 Mass. 334, 335 (1995).
5.
It is undisputed that the plaintiff was invited to use public property for recreational purposes without the requirement of a fee. Thus, this case falls within the scope of the Recreational Use Law. The plaintiff, therefore, has no cause of action against the defendant based on negligence. The question becomes whether a jury would be warranted in finding that the conduct of the defendant in not maintaining the monkey bars rises to the level of reckless conduct. “Reckless conduct may consist of a failure to act, if there is a duty to act, as well as affirmative conduct.” Sandler, 419 Mass. at 336. This civil standard is the same as the standard that is used in the criminal context for purposes of the crime of involuntary manslaughter. See id., citing Commonwealth v. Welansky, 316 Mass. 383, 397 (1944). In order to recover under a theory of reckless conduct, the plaintiff must establish that under “the totality of the circumstances . .. [there is] sufficient evidence to show that the defendants’ conduct in the face of exceedingly dangerous conditions created a high degree of risk that death or serious physical harm would result.” Boyd v. National Railroad Passenger Corp., 446 Mass. at 545 (holding that evidence that conductor was *374 operating the train at an excessive rate of speed and that he failed to sound the train’s horn at least once, 320 feet from the Pine Street grade crossing, in violation of G.L.c. 160, §38, would support a finding that he acted recklessly). In Boyd, the Court explained that Massachusetts follows the Restatement (Second) of Torts formulation of reckless disregard for safely. See Boyd, 446 Mass. at 547, quoting Restatement (Second) of Torts, at §500 comment a. The difference between negligence and a reckless disregard for safety is one of kind and not simply one of degree. Montes v. MBTA, 446 Mass. 181, 185 (2006). “While negligence may result from ‘inadvertence, incompetence, unskillfulness, or a failure to take [adequate] precautions,’ recklessness ‘requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.’ ” Boyd, 446 Mass. at 547, quoting Restatement (Second) of Torts, supra at 500, comment g, at 590.[4] The same point was made in Manning v. Nobile, 411 Mass. 382, 387-88 (1991), where the court observed that two requirements must be met for conduct to rise to the level of a reckless disregard for safely. “First, the defendant must knowingly or intentionally disregard an unreasonable risk. Second, the risk, viewed prospectively, must entail a high degree of probability that substantial harm would result to the plaintiff.”
6.
The plaintiff points out in its memorandum of law that there are numerous playground safety standards that date back to the time of the installation of the monkey bars in this case and which indicate two critical facts about this type of recreational apparatus. First, most playground injuries involving the use of monkey bars involve children who fall from the bars and strike the underlying surface. See Plaintiffs Memorandum in Opposition to Defendant’s Motion for Summary Judgment at 3, quoting Attachment 8, A Handbook for Public Playground Safety (U.S. Consumer Product Safety Commission). Second, the plaintiff points out that numerous playground safety advisories stress the importance of covering the concrete footings underneath the monkey bars to protect children against serious head injuries. See Plaintiffs Memorandum in Opposition to Defendant’s Motion for Summary Judgment at 3-4 quoting attachments 6-13 (product safety advisories from the 1960s to 2005 which indicate the need to cover the concrete footings underneath monkey bars to guard against serious head injuries to children).
7.
In order to determine whether the defendant’s failure to take steps to address the potential for serious head injuries suffered by children who fall from monkey bars onto an uncovered concrete surface below the bars is sufficient to constitute reckless conduct on the part of the defendant town, it is instructive to examine Sandler v. Commonwealth, 419 Mass. 334 (1995). There, the Supreme Judicial Court considered a case in which the plaintiff-bicyclist was injured when he fell off his bicycle as he rode through an unlit tunnel on a designated public bikeway under the defendant’s control. The evidence was that plaintiffs fall was caused by an uncovered, eight-inch wide, twelve-inch long drain in the unlit tunnel. The drain was about eight inches deep, and had had a cover on it in the past. The tunnel was designed to be lit, but vandals had removed the drain cover and had made the lights inoperative. In assessing the level of culpability associated with reckless conduct, the Supreme Judicial Court observed that “reckless conduct must be based on a high degree of risk that death or serious bodily injury will result from a defendant’s action or inaction when under a duty to act.” Id. at 337. Even though the Commonwealth, acting through the Metropolitan District Commission, was aware of the basic facts that gave rise to the plaintiffs injuries, the Court held that its inaction and inattention did not rise to the level of reckless conduct.
There was evidence that the MDC, knowing of the danger posed by absent drain covers in the dark tunnel, did not respond reasonably. It had no policy for bikeway inspection, had no record of the existence or replacement of drain covers from January 1 to October 30, 1987, and did not have drain cover replacements on hand, although they were frequently stolen and there was room to store replacement covers in the tunnel closet. There was expert testimony that the design of the lighting and drainage in the tunnel was deficient and that feasible alternatives were available at reasonable costs, including vandal-resistant lighting and drains capable of being fastened. Nevertheless, the degree of the risk of injury in this case does not meet the standard that we have established for recklessness. While it is true that each case depends on its facts and that some cases are close to the line, this case, which involves a persistent failure to remedy defects in a tunnel on a traveled bikeway, simply does not present a level of dangerousness that warrants liability under G.L.c. 21, §17C, for the MDC’s inaction.
Id. at 338-39.
8.
If the risk of serious injury or death that may result from the failure to correct a missing eight-inch by twelve-inch cover on an eight-inch deep drain on a well traveled, dark bike path that the owner knew had been removed many times in the past is not sufficient to permit a jury to find reckless conduct, then the defendant’s failure to properly maintain the concrete footings underneath the monkey bars located at one of its middle schools is not sufficient to warrant a finding of reckless conduct. Accord, Sandler, 419 Mass. at 336 (“The risk of death or great bodily injuiy must be known or reasonably apparent, and harm must be a probable consequence of defendant’s election to run that risk or of his failure to reasonably recognize it”) (citations omitted).[5]
*375 ORDER
This court is aware that the plaintiff suffered a serious injury as a result of his fall from the monkey bars. Moreover, it appears that if the defendant municipality had exercised due care in properly maintaining the cement footings underneath the monkey bars the child’s injury might have been prevented or its severity lessened. However, neither the severity of the injury nor the cost of correcting the problem are outcome determinative of whether the plaintiff may maintain his suit for damages. The legislative policy expressed in the Massachusetts Recreational Use law, G.L.c. 21, § 17C is that landowners will not be liable to those who use recreational space or facilities unless the landowner engages in willful, wanton, or reckless conduct. The view adopted by our Supreme Judicial Court is that reckless disregard for the safety of others “differs from that form of negligence which consists in mere inadvertence, incompetence, unskilfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts that would disclose this danger to any reasonable man.” See Boyd, 446 Mass. at 547, quoting Restatement (Second) of Torts, §500, comment g. There is no evidence in the record before me of a conscious choice made by the Town of Grafton to disregard the probable risks associated with injuries of the type suffered by the plaintiff. If there is to be a change in the law, it must come about as a result of legislative action with regard to the scope of liability under the Recreational Use law, or based on a new interpretation of the standards governing liability by our Supreme Judicial Court.
For the above reasons, the defendant’s motion for summary judgment is ALLOWED.

The evidence indicates that the plaintiffs parents were not aware of the presence of the cement footings underneath the monkey bars but that the plaintiff may have noticed them. See Plaintiffs Memorandum in Opposition to Summary Judgment, exhibit 3, Answer to Interrogatory 5.

There is evidence that the monkey bars were installed when the school was built as an elementary school in 1969. Defendant’s Memorandum in Support of Summary Judgment at 4. Defendant notes that they “have not been used by the school department since at least 1999 . . .” See Defendant’s Memorandum in Support of Summary Judgment at 4, discussing testimony of Grafton. Middle School Principal Lind. There is also evidence that the Director of Maintenance for the Town of Grafton has not undertaken any action regarding the maintenance of the monkey bars.

The recreational use statute was adopted by the legislature to encourage landowners to make their property available to the public for recreational purposes, without the payment of an entrance fee. It achieves this goal by, in turn, offering participating landowners protection against lawsuits based on ordinary negligence by persons engaged in recreational activities on the land. See Ali v. City of Boston, 441 Mass 223, 235-37 (2004). “It is not the nature or quality of the land or the uses to which it is put by its owners, but the nature of the use the public makes of it, i.e., recreational activity, that determines the applicability of G.L.c. 21, §17C.” Forbush v. Lynn, 35 Mass.App.Ct. 696, 702 n.10 (1994).

The following passage from the Restatement (Second) of Torts is particularly instructive in distinguishing negligence from recklessness, which is essentially the Court’s task here.
g. Negligence and recklessness contrasted. Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskilfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts that would disclose this danger to any reasonable man . . . The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.
Restatement (Second) of Torts §500 p. 3 (1965).

The cases in which the evidence has been found sufficient to support a claim for reckless disregard all involve an extremely high level of risk of death or serious bodily injury. See, e.g., Commonwealth v. Levesque, 436 Mass. 443, 452-53 (2000) (failing to report a rapidly spreading fire in circumstances in which the defendants had several opportunities to do so before six of the responding firefighters were killed in trying to suppress it would support a finding of reckless disregard); Freeman v. United Fruit Co., 223 Mass. 300, 302 (1916) (deliberately throwing large, heavy roll of canvas stiffened with ice off deck from great height, thereby breaking plaintiffs leg); Romana v. Boston Elevated Ry., 218 Mass. 76, 8 (1914) (girl shocked and burned when she tripped into electrically charged pole on path commonly used by children with defendant’s permission, where defendant had been warned of condition of pole, and had done nothing); Pratt v. Martineau, 69 Mass.App.Ct. 670 (2007) (reckless conduct could be based on a gun owner’s decision to allow his son to keep a loaded firearm in an open drawer); Forbush v. Lynn, 35 Mass.App.Ct. 696, 702-04 (1994) (town acted with reckless disregard when a seven-year-old child who slid down a broken swing chain impaled himself on a large hook at the end of the chain in circumstances in which a city employee had conducted an inspection one month earlier and filed a written report noting the broken swing that caused the injury). Compare Dean v. City of Fitchburg, Mass. Superior Court No. 031058 (May 3, 2005) (Fecteau, J.) (motion for summary judgment is denied based on evidence that a five-year-old child who was attending day camp at a municipal park was injured when while running with other children he was caught on a defective metal fence that jutted into the children’s play area). The Dean case, which was not cited by the parties, is distinguishable in that the risk associated with the defective fence was in the nature of a latent defect, and, unlike the present case, the landowner was specifically aware that young children were using the property where the latent defect existed because the city invited them there for a free day camp. This court is aware of only one other reported decision involving similar facts. In Young by Young v. Chicago Housing Authority, 162 Ill.App.2d 53, 57, 515 N.E.2d 779, appeal den., 117 Ill.2d 555, 517 N.E.2d 1097 (1987), an Illinois appellate court held that a five-year-old child who fell from monkey bars onto a concrete surface below could not maintain a tort action against the Housing Authority based on willful or wanton conduct.